EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Efraín González Fuentes;<br>José M. Urbina Pérez;<br>Ricardo Marrero Vázquez;<br>Benjamín Alers Rodríguez;<br>Héctor L. Quiñones Andino;<br>Melvin Suárez Fernández;<br>Edgardo Rivera Borrero;<br>Rafael Rivera Pérez;<br>Arsenio Sánchez Rodríguez;<br>Andrés Candelario Agosto;<br>Jorge L. De Jesús Rivera;<br>José R. Rivera Torres;<br>Julio Alberto Medina Medina;<br>Carlos Delgado Rivera<br><br>Peticionarios-Apelantes<br><br>v.<br><br>Estado Libre Asociado de P.R.;<br>Administración de Corrección;<br>Administrador de Corrección,<br>Lic. Miguel A. Pereira Castillo;<br>Superintendente de Bayamón 501,<br>Sr. Sixto Marrero y<br>Superintendente de Bayamón 308,<br>Sr. Roberto del Valle Navarro<br><br>Demandados-Apelados | Certiorari<br><br>2006 TSPR 44<br><br>167 DPR \_\_\_\_ |

Número del Caso: AC-2005-48

Fecha: 29 de marzo de 2006

Tribunal de Apelaciones:

Región Judicial de Bayamón

Panel integrado por su Presidente, Juez Arbona Lago, el Juez Miranda
De Hostos y la Jueza Pabón Charneco

Abogados de la Parte Peticionaria:

Lcdo. Carlos V. García Gutiérrez
Lcdo. José R. Roque Velázquez
Lcdo. Rafael E. Rodríguez Rivera
Lcda. Lillian N. Miranda Rodríguez
Lcdo. Guillermo Ramos Luiña

Oficina del Procurador General:

Lcda. Amir Cristina Nieves Villegas
Procuradora General Auxiliar

Lcdo. Salvador J. Antonetti Stutts
Procurador General

Materia: Hábeas Corpus

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Efraín González Fuentes;            *
José M. Urbina Pérez;               *
Ricardo Marrero Vázquez;            *
Benjamín Alers Rodríguez;           *
Héctor L. Quiñones Andino;          *
Melvin Suárez Fernández;            *
Edgardo Rivera Borrero;             *          AC-2005-48
Rafael Rivera Pérez;                *
Arsenio Sánchez Rodríguez;          *
Andrés Candelario Agosto;           *
Jorge L. De Jesús Rivera;           *
José R. Rivera Torres;              *
Julio Alberto Medina Medina;        *
Carlos Delgado Rivera               *
                                    *
   Peticionarios-Apelantes          *          Apelación
                                    *
            v.                      *
                                    *
Estado Libre Asociado de P.R.;      *
Administración de Corrección;       *
Administrador de Corección,         *
Lic. Miguel A. Pereira Castillo;    *
Superintendente de Bayamón 501,     *
Sr. Sixto Marrero y                 *
Superintendente de Bayamón 308,     *
Sr. Roberto del Valle Navarro       *
                                    *
   Demandados-Apelados              *
*********************************

Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico a 29 de marzo de 2006.

Acuden ante nos catorce convictos por el delito de asesinato solicitando que revoquemos una sentencia del Tribunal de Apelaciones. Mediante dicha sentencia, el foro apelativo determinó que la Administración de Corrección actuó correctamente al cancelarle a estos convictos el privilegio de libertad bajo supervisión electrónica y ordenar su reingreso a prisión. Ello en vista de que, como cuestión de derecho, los convictos por

el delito de asesinato no cualifican para el programa de supervisión electrónica.

En esencia, los convictos alegan que fueron válidamente puestos en libertad en virtud de dicho programa y que han adquirido un derecho constitucional a continuar en libertad bajo supervisión electrónica. Argumentan, además, que aplicarles retroactivamente la Ley Núm. 49 de 26 de mayo de 1995[1] (en adelante, Ley Núm. 49 de 1995), mediante la cual se excluye a los convictos de asesinato del programa de supervisión electrónica, viola sus derechos constitucionales bajo la cláusula contra leyes *ex post facto*.

En vista de que al momento de cometer los hechos delictivos los convictos no tenían derecho a ser puestos en libertad bajo supervisión electrónica y de que posteriormente se les dejó libres en virtud de un error administrativo que no generó intereses libertarios protegidos bajo el debido proceso de ley, confirmamos.

I.

A.

Los catorce convictos fueron sentenciados a cumplir penas de reclusión por delitos de asesinato ocurridos entre marzo de 1978 y octubre de 1991.[2] Posteriormente,

---

[1] 4 L.P.R.A. sec. 1101 y siguientes.

[2] Los nombres de los convictos y las fechas exactas de comisión de los referidos delitos fueron los siguientes: (1) Efraín González Fuentes –agosto de 1984, (2) José M. Urbina Pérez – febrero de 1986, (3) Ricardo Marrero Vázquez – marzo de 1986, (4) Benjamín Alers

se les concedió el privilegio de libertad bajo supervisión electrónica en varias fechas entre junio de 2000 y noviembre de 2003.

Así las cosas, el Estado ordenó el reingreso de los convictos a la institución correccional para que extinguieran el resto de su sentencia. Fundamentaron dicha decisión en que la concesión a los convictos de libertad bajo supervisión electrónica fue nula toda vez que, en virtud de los delitos cometidos (asesinato), ninguno de ellos cualificaba para dicho privilegio.[3]

En abril de 2005, los convictos cuestionaron ante el Tribunal de Primera Instancia la legalidad de su detención mediante el auto de *hábeas corpus*. Luego de celebrarse la vista correspondiente, el Tribunal de Primera Instancia ordenó la excarcelación de los convictos. Adujo, en síntesis, que el Estado le "creó expectativas" a los convictos de que cualificaban para el

---

Rodríguez – marzo de 1989, (5) Héctor L. Quiñónes Andino – abril de 1988, (6) Melvin Suárez Fernández – marzo de 1978, mayo y julio de 1981, (7) Edgardo Rivera Borrero – diciembre de 1986, (8) Rafael Rivera Pérez – abril de 1988, (9) Arsenio Sánchez Rodríguez – septiembre de 1985, (10) Andrés Candelario Agosto – julio de 1984, (11) Jorge L. De Jesús Rivera – julio de 1986, (12) José R. Rivera Torres – octubre de 1991, (13) Julio Alberto Medina Medina – septiembre de 1984, (14) Carlos Delgado Rivera – septiembre de 1985.

[3] El 21 de abril de 2005 la Administración de Corrección celebró una vista oral para concederles a los convictos la oportunidad de ser oídos. Luego de celebrada dicha vista, la Administración de Corrección se reiteró en su determinación de reingresarlos a prisión en vista de que se les había concedido la libertad de forma errónea.

programa de supervisión electrónica y que ahora se ve impedido de actuar en contra de sus propios actos.

Inconforme, el Ministerio Público acudió ante el Tribunal de Apelaciones solicitando que se revocara la determinación del foro de instancia, toda vez que el curso de acción tomado por el Estado fue con el fin de hacer cumplir las leyes y subsanar errores administrativos que colocaban en alto riesgo la seguridad pública. El foro apelativo revocó la determinación del Tribunal de Primera Instancia.

Insatisfechos, los convictos acuden ante nos mediante recurso de apelación. Argumentan, en esencia, que la actuación estatal está constitucionalmente vedada por la cláusula contra leyes *ex post facto*. Ello en virtud de que el Estado pretende aplicarle retroactivamente una ley que les desfavorece en tanto les elimina la posibilidad de cualificar para el programa de supervisión electrónica. Alegan ser elegibles a dicho programa en virtud de dos pronunciamientos administrativos, a saber: un memorando interno circulado por la Administración de Corrección el 14 de julio de 1989[4] y el Reglamento Núm. 5065 aprobado por dicha agencia el 4 de mayo de 1994. Aducen, además, que la acción del Estado es contraria al debido proceso de ley.

---

[4] El referido memorando fue reemplazado por el "memorando normativo" emitido el 15 de abril de 1992 por el entonces Administrador de Corrección, Sr. Lorenzo Villalba Rolón.

En atención a que existen dos sentencias contradictorias del Tribunal de Apelaciones en cuanto a este asunto, acogimos el recurso de apelación presentado. Ambas partes han comparecido. Con el beneficio de sus argumentos, estamos en posición de resolver.[5]

## II.

### A.

El Artículo II, sección 12 de nuestra Constitución prohíbe la aplicación de leyes *ex post facto*. 1 L.P.R.A., Art. II, sec. 12. Reiteradamente hemos señalado que existen cuatro tipos de estatutos que son *ex post facto,* a saber: (1) leyes que criminalizan y castigan un acto que al ser realizado no era delito; (2) leyes que agravan

---

[5] Tomamos conocimiento judicial de que el 26 de agosto de 2005 un grupo de convictos distintos a los que tenemos ante nos en el caso de epígrafe presentaron una demanda ante la Corte Federal de Distrito casi idéntica a la que originó la presente controversia.

El 7 de septiembre de 2005, dicho foro concedió un *injunction* preliminar ordenándole a la Administración de Corrección a abstenerse de reingresar a prisión a los convictos peticionarios. Inconforme con dicha determinación, el E.L.A. acudió ante la Corte de Apelaciones Federal para el Primer Circuito.

El 15 de febrero de 2006 el foro apelativo federal resolvió que, conforme a la doctrina establecida en Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941), la Corte de Distrito Federal "debe de abstenerse de tomar cualquier otra acción relacionada con este asunto hasta que el Tribunal Supremo de Puerto Rico resuelva el caso de Gonzáles-Fuentes v. Estado Libre Asociado." Expresaron, además, que la controversia planteada presenta "muchos asuntos de derecho estatal...y sería mejor que los tribunales de Puerto Rico decidan esas cuestiones de derecho primero; además, no hay razón para pensar que las cortes de Puerto Rico no puedan proteger los derechos de los demandantes". Rivera Feliciano v. Acevedo Vilá, 438 F.3d 50, 62 (1er Cir., 2006)(traducción nuestra).

un delito o lo hacen mayor de lo que era al momento de ser cometido; (3) leyes que alteran el castigo imponiendo una pena mayor que la fijada para el delito al momento de ser cometido; y (4) leyes que alteran las reglas de evidencia exigiendo menos prueba que la requerida por ley al momento de la comisión del delito para castigar al acusado o reduciendo el *quántum* de evidencia necesario para encontrarlo culpable. El Pueblo de Puerto Rico en interés del menor F.R.F., 133 D.P.R. 172 (1993), Fernández v. Rivera, 70 D.P.R. 900 (1949).

La cláusula constitucional contra leyes *ex post facto* garantiza que los estatutos provean al ciudadano un aviso adecuado ("fair warning") de la conducta prohibida y las consecuencias penales que acarrea realizar dicha conducta. Además, mediante esta cláusula se intenta asegurar que el Estado no utilice el poder coercitivo de forma arbitraria o vengativa. Por último, con dicha prohibición se promueve que la Asamblea Legislativa utilice la sanción penal solamente cuando la misma pueda tener el efecto de disuadir al potencial ofensor. Weaver v. Graham, 450 U.S. 24 (1981). *Véase, además, a* Wayne R. LaFave, Principles of Criminal Law 88 (West, 2003).

De otra parte, es necesario aclarar que la protección contra leyes *ex post facto* solamente se activa cuando se pretende aplicar una ley penal de manera retroactiva. Se requiere también que la ley cuya aplicación retroactiva se cuestiona sea más perjudicial

para el acusado que la vigente al momento de la comisión del acto. Es decir, para que un estatuto contravenga la cláusula contra leyes *ex post facto* es necesario que el mismo sea de aplicación retroactiva y, además, que sea más oneroso para el imputado que el vigente a la fecha en que se cometió la ofensa. Weaver v. Graham, id.

Al determinar si una ley penal es más onerosa que la vigente al momento de la comisión de los hechos es necesario examinar si, en comparación con el viejo estatuto, la nueva ley tiene el efecto de alargar el término de reclusión a ser cumplido por el sujeto. A estos efectos, es *ex post facto* cualquier ley que elimina retroactivamente bonificaciones por buen comportamiento que estaban vigentes en el momento en que el acusado realizó la conducta delictiva. Lynce v. Mathis, 519 U.S. 433 (1997).

Como corolario de lo anterior, resulta incompatible con la protección contra leyes *ex post facto* aplicar retroactivamente una ley que elimina a cierto grupo de convictos la posibilidad de ser elegibles para la concesión de libertad bajo palabra o bajo supervisión electrónica. United States v. Paskow, 11 F.3d 873 (1993). *Véase, además*, Wayne R. LaFave, I Substantive Criminal Law sección 2.4 (West, 3ª ed., 2003). Ello se debe a que la eliminación retroactiva de esos beneficios tiene el potencial de alargar el término de reclusión a cumplirse por el convicto.

B.

La cláusula constitucional contra leyes *ex post facto* solamente veda la aplicación retroactiva de actos de naturaleza legislativa. Por tanto, la protección concedida mediante dicha cláusula no se extiende a actos judiciales.[6] LaFave, *Id.*

De otra parte, la prohibición contra la aplicación retroactiva de leyes desfavorables solamente se extiende a estatutos de naturaleza criminal. Por ende, como norma general, la Asamblea Legislativa no está impedida de aplicar retroactivamente leyes de carácter civil.[7]

Debemos señalar, además, que la prohibición contra leyes *ex post facto* protege al ciudadano no solo contra la aplicación retroactiva de estatutos sino también contra la aplicación o derogación retrospectiva de reglamentos administrativos y ordenanzas municipales que acarrean consecuencias penales. Ross v. State of Oregon, 227 U.S. 150 (1913). La razón para ello es que mediante la aprobación de reglamentos y ordenanzas las agencias administrativas y municipios están ejerciendo poderes que le han sido válidamente delegados por la Asamblea Legislativa.

---

[6] Claro está, mediante la cláusula constitucional que garantiza el debido proceso de ley se prohíbe la aplicación retroactiva de pronunciamientos judiciales que extienden el ámbito de aplicación de un delito de manera imprevisible. *Véase a* Bouie v. City of Columbia, 378 U.S. 347 (1964).

[7] No obstante, la aplicación retroactiva de legislación civil podría violar alguna otra protección constitucional como, por ejemplo, la prohibición contra el menoscabo de obligaciones contractuales.

Por otro lado, la prohibición contra leyes *ex post facto* no se activa mediante la aplicación o derogación retroactiva de órdenes administrativas, declaraciones de política pública o reglas interpretativas. Estas órdenes o declaraciones no tienen fuerza de ley. Por ende, no son consideradas "leyes" a los fines de la cláusula que protege contra estatutos *ex post facto.*

C.

Es doctrina ampliamente reconocida que la Asamblea Legislativa puede delegar poderes a una agencia administrativa siempre y cuando, al así hacerlo, provea un principio inteligible para canalizar la discreción de la agencia. Asociación de Farmacias de la Comunidad v. Departamento de Salud, res. el 5 de febrero de 2002, 2002 TSPR 13. Como consecuencia de dicha doctrina, es permisible constitucionalmente que se le delegue a una agencia administrativa la autoridad para emitir reglamentos con fuerza de ley.

Por otro lado, la Ley de Procedimiento Administrativo Uniforme (en adelante LPAU), 3 L.P.R.A. sec. 2101-2202, requiere que siempre que la agencia pretenda adoptar un reglamento se cumpla con los requisitos mínimos del procedimiento de reglamentación informal. Conforme con ello, para que un reglamento aprobado por una agencia administrativa sea válido es necesario que se cumpla con dos requisitos procesales fundamentales, a saber: (1) que se notifique al público

del reglamento que pretende aprobarse, y (2) que se le provea a la ciudadanía una oportunidad para someter comentarios sobre el reglamento que se intenta promulgar. *Véase a* Demetrio Fernández Quiñónez, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme 111-115 (Dictum, 2ª ed., 2001).

Es necesario aclarar, sin embargo, que existen ciertos pronunciamientos administrativos que están exentos de cumplir con el proceso informal de reglamentación contemplado en la LPAU. Estos pronunciamientos pueden clasificarse en tres grupos: reglas procesales, declaraciones interpretativas y declaraciones de política general. *Véase a* Richard J. Pierce, *Distinguishing Legislative Rules from Interpretative Rules*, 52 Admin. L. Rev. 547 (2000). *Véase, además, a* Hirám Meléndez Juarbe, *Derecho Administrativo*, 73 Rev. Jur. U.P.R. 509, en la pág. 510.[8]

El común denominador de dichas reglas es que constituyen pronunciamientos administrativos que no tienen fuerza de ley y, por tanto, no vinculan a la agencia ni crean derechos sustantivos o procesales en los cuales el ciudadano puede confiar. *Véase a* William Funk, *A Primer on Nonlegislative Rules*, 53 Admin. L. Rev. 1321

---

[8] Usualmente de lo que se trata es de "cartas circulares, cartas normativas, directrices, memorandos, y demás documentos menos formales que emiten las agencias para darle uniformidad a sus procedimientos internos, pautar su discreción o interpretar las leyes que administran." Meléndez Juarbe, *supra,* en las págs. 510-511.

(2001). En atención a esto, y en contraposición a las reglas legislativas que generan derechos entre las partes, estos tres tipos de declaraciones son más bien reglas no-legislativas que no tienen ningún efecto legal vinculante. Meléndez Juarbe, *supra.*

D.

La cláusula del debido proceso de ley constituye la disposición que garantiza los derechos del ciudadano frente a intervenciones injustificadas del Estado. Pueblo v. Vega Rosario, 148 D.P.R. 980 (1999). Por ello, se considera que esta protección es "la garantía fundamental que tiene un ciudadano ante una investigación y proceso criminal." Pueblo v. Arzuaga Rivera, 2003 TSPR 157, res. el 4 de noviembre de 2003.

El debido proceso de ley prohíbe que el gobierno afecte los derechos fundamentales del individuo de manera irracional o arbitraria. Ello sería contrario a los intereses más básicos que deben garantizárseles a un ser humano en una sociedad democrática. Pueblo v. Colón Mendoza, 149 D.P.R. 630 (1999).

Cónsono con los principios anteriormente esbozados, en la jurisdicción federal se ha expresado que el debido proceso de ley protege al ciudadano contra actuaciones del Estado que estremecen la conciencia ("shock the conscience"). Rochin v. California, 342 U.S. 432 (1957). Como consecuencia de esto, se le prohíbe a las autoridades gubernamentales actuar de forma

"fundamentalmente injusta" ("fundamentally unfair") en contra de un acusado o convicto. Una actuación estatal es fundamentalmente injusta cuando ofende un principio de justicia firmemente establecido en las tradiciones y en la conciencia de nuestro pueblo. Patterson v. New York, 432 U.S. 197 (1977).

La cantidad de actuaciones gubernamentales que violan el debido proceso de ley por ser fundamentalmente injustas son limitadas. Se trata de actos tan lesivos de la dignidad humana que no deben ser permitidos bajo ninguna circunstancia. No se trata, por tanto, de una cláusula residual ("catch-all clause") que le permita al individuo extender la protección de otras garantías constitucionales más allá de su tradicional ámbito de aplicación. A estos efectos, el Tribunal Supremo Federal ha expresado que:

> En el campo del derecho penal, hemos interpretado estrechamente la categoría de actuaciones que violan la "justicia fundamental". Ello se basa en el reconocimiento de que, más allá de las garantías individuales especificadas en la Carta de Derechos, la cláusula del debido proceso de ley es de operación limitada...La Carta de Derechos se refiere en términos expresos a muchos aspectos del procedimiento criminal, y la expansión de dichas garantías constitucionales bajo la maleable rúbrica de la cláusula del debido proceso de ley promueve una indebida interferencia tanto con juicios valorativos legislativos como con el delicado balance que la Constitución establece entre la libertad y el orden. Medina v. California, 505 U.S. 437, 443 (1992) (traducción nuestra)

Por otro lado, debe señalarse que los errores administrativos no son susceptibles de crear intereses libertarios que activen la protección del debido proceso de ley. A estos efectos, hemos expresado en varias ocasiones que "un error administrativo no crea un estado de derecho que obligue a una agencia ni impide su corrección". Santiago Declert y Albanesi v. Departamento de la Familia, 2001 T.S.P.R. 5, res. el 17 de enero de 2001; Magriz Rodríguez v. Empresas Nativas, Inc., 143 D.P.R. 63 (1997).

En vista de lo anterior, una actuación administrativa mediante la cual se le concede erróneamente a un convicto la libertad puede ser rectificada por la agencia sin violentar los derechos constitucionales del sujeto. A igual conclusión llegó el Tribunal de Apelaciones Federal para el cuarto circuito cuando expresó que:

> Hemos concluido que en este caso no existe violación a un derecho constitucional al amparo de la doctrina [del debido proceso de ley]. Específicamente, concluimos que el particular interés libertario que se argumenta existe aquí- continuar en un estado de libertad erróneamente concedido por el gobierno y disfrutado por un período significativo de tiempo por un convicto cuya sentencia no ha expirado- no puede considerarse uno de esos "derechos y libertades fundamentales que están objetiva y profundamente arraigados en la historia y las tradiciones de esta nación"...Tampoco, a menos que [dicho acto] sea motivado por propósitos vengativos u opresivos, lo cual no se argumenta aquí, podría considerarse que el acto del ejecutivo de ordenar el reingreso a prisión "estremece la conciencia

contemporánea". <u>Hawkins v. Freeman</u>, 195 F.3d
732 (4° Cir., 1999) (traducción nuestra).

De otra parte, no debemos confundir la equivocada concesión de libertad con la existencia de un interés libertario capaz de activar la protección del debido proceso de ley. Ciertamente, la libertad adquirida por equivocación no constituye un interés que impida al Estado corregir su actuación incorrecta. Lo contrario implicaría congelar en el tiempo las consecuencias nocivas de actuaciones estatales arbitrarias o erradas.

Debemos señalar, además, que las consecuencias de aceptar que la concesión errónea de libertad a un convicto genera un interés libertario protegido por el debido proceso de ley son claramente lesivas al interés público y a nuestra sociedad. Aceptar dicha posición nos obligaría, por ejemplo, a proveerle la protección del debido proceso de ley a quien fue dejado en libertad en vista de un error clerical[9] o un cómputo matemático errado. Evidentemente, no puede sostenerse seriamente que el gobierno está impedido de reingresar a dicho convicto a prisión en vista de que el mismo adquirió un interés de permanecer en libertad como consecuencia de dicho error matemático o clerical.

---

[9] Sería absurdo, por ejemplo, considerar que un convicto que fue dejado en libertad en virtud de información incorrecta que obraba en su expediente tenga un derecho a continuar en libertad impidiendo así que el Estado corrija su error.

A la luz del marco normativo antes expuesto, pasemos a examinar los hechos que dieron lugar al caso que tenemos ante nos.

III.

A.

En el caso de autos, la Administración de Corrección sostiene que la exclusión de convictos del programa de supervisión electrónica no constituye un "aumento en castigo" capaz de activar la protección contra leyes *ex post facto*. Fundamentan su postura en que un cambio en el programa de supervisión electrónica, aunque sea desfavorable a los convictos, no altera de modo alguno la sentencia que se les impuso y, por tanto, no puede considerarse una "agravación de la pena". No estamos de acuerdo.

Lo determinante en estos casos es si la ley que se pretende aplicar retroactivamente es más onerosa que la que estaba en vigor cuando se cometieron los hechos. A estos efectos, resulta particularmente importante examinar si, en comparación con la vieja ley, el nuevo estatuto tiene el potencial de alargar el término de reclusión a ser cumplido por el sujeto. <u>Weaver v. Graham</u>, *supra.*

Indudablemente, una ley que de manera retrospectiva excluye a cierto grupo de convictos de ser elegibles para un programa de libertad bajo supervisión electrónica puede tener este efecto. En vista de ello, debemos

concluir que la eliminación del privilegio mediante la Ley Núm. 49 de 1995 es susceptible de activar la protección contra leyes *ex post facto*. <u>United States v. Paskow</u>, *supra.* Claro está, este planteamiento solamente procedería si dicha ley resulta ser más onerosa que la vigente al momento de la comisión de la ofensa.

B.

Los convictos alegan, por su parte, que la Administración de Corrección no podía constitucionalmente revocarles el privilegio de libertad bajo supervisión electrónica pues ello equivaldría a aplicarles retroactivamente la Ley Núm. 49 de 1995 de forma contraria a la cláusula contra leyes *ex post facto*. No les asiste la razón.

De los hechos anteriormente reseñados se desprende que trece de los catorce convictos cometieron el delito de asesinato antes de que la Administración de Corrección emitiera el primer "memorando normativo" de 14 de julio de 1989 concediéndole a los convictos por dicho delito el privilegio de libertad bajo supervisión electrónica.[10] Es decir, no cabe duda de que éstos no eran elegibles para participar de dicho programa en el momento en que cometieron los hechos. Ello en virtud de que, a esa fecha, el mismo sencillamente no existía.

---

[10] Solamente José R. Rivera Torres cometió el delito de asesinato en una fecha posterior a la entrada en vigencia del referido memorando, a saber: octubre de 1991.

Como hemos expresado, para que se active la protección contra leyes *ex post facto* es necesario que el estatuto que pretende aplicarse retroactivamente sea más oneroso para el imputado que el vigente a la fecha en que se cometió la ofensa. Dicho requisito claramente está ausente en el caso de los trece convictos antes mencionados.

Esto se debe a que el estatuto cuya aplicación retroactiva cuestionan, la Ley Núm. 49 de 1995, no es más oneroso que el vigente al momento en que cometieron los hechos. Nótese que al momento de cometer los hechos los convictos no tenían derecho al privilegio de supervisión electrónica. Por ello, no podemos concluir que aplicarle retroactivamente una ley que los excluye del disfrute de dicho privilegio les es perjudicial en comparación con la normativa vigente al momento en que cometieron el delito.

Por otro lado, el convicto José R. Rivera Torres cometió los hechos poco más de dos años después de haberse aprobado el "memorando normativo" de 1989. En atención a ello, aduce que aplicarle retroactivamente la Ley Núm. 49 de 1995 contraviene la protección constitucional contra leyes *ex post facto* pues la misma resulta ser más onerosa que la ley vigente al momento en que cometió la ofensa. No le asiste la razón.

Conforme a los términos expresos de dicha cláusula, solamente se prohíbe la aplicación retroactiva de actos de naturaleza legislativa. Ello quiere decir, en esencia,

que la protección contra leyes *ex post facto* se extiende solamente a leyes y a reglamentos válidamente aprobadas en ejercicio de un poder delegado por la Asamblea Legislativa. Ross v. State of Oregon, *supra.*

El "memorando normativo" emitido por la Administración de Corrección no constituye un reglamento con fuerza de ley pues no fue promulgado siguiendo los dos parámetros establecidos en la LPAU para ello: notificación de la regla a aprobarse, y participación ciudadana. Por ende, es forzoso concluir que el mismo constituye una regla no-legislativa que no es susceptible de generar derechos entre las partes ni de vincular a la agencia en el futuro. Meléndez Juarbe, *supra.*

En virtud de esto, somos del criterio de que el "memorando normativo" de julio de 1989 no constituye una actuación "legislativa" capaz de activar la protección contra leyes *ex post facto.*

C.

Por otro lado, los convictos sostienen que la Administración de Corrección les violó el debido proceso de ley al reingresarlos a prisión luego de haberles válidamente concedido el privilegio de libertad bajo supervisión electrónica. Tampoco les asiste la razón.

La Administración de Corrección dejó en libertad bajo supervisión electrónica a los convictos en distintas fechas entre junio de 2000 y noviembre de 2003. Evidentemente, durante dichas fechas ya había entrado en

vigor la Ley Núm. 49 de 1995. Como hemos expresado, la ley en cuestión expresamente excluía a los convictos de asesinato de ser elegibles a este programa.

No debe caber duda, por tanto, que los convictos no tenían derecho a ser liberados bajo dicho programa de conformidad con la legislación vigente al momento en que se les concedió dicho privilegio. Por ende, la actuación de la Administración de Corrección de excarcelar a los convictos en virtud de dicho programa fue contraria a los términos expresos de la normativa estatuida por la Asamblea Legislativa en la Ley Núm. 49 de 1995.

A tenor con lo antes expuesto, es forzoso concluir que en el presente caso se les concedió a los convictos la libertad mediante una actuación administrativa que no encontraba apoyo en ley.[11] Ello constituye un error administrativo susceptible de ser corregido. Según hemos expresado, los errores administrativos no pueden generar un interés libertario capaz de activar la protección del

---

[11] Tampoco nos convencen los argumentos de los convictos de que la política pública de la agencia desde 1995 hasta el 2005, según evidenciada por ciertos memorandos y escritos internos, había sido no aplicar retroactivamente la Ley Núm. 49 de 1995. Como hemos explicado, las declaraciones de política pública de la agencia no constituyen reglas legislativas susceptibles de generar derechos entre las partes y de vincular a la agencia en momentos futuros. Ello en atención a que dichos pronunciamientos no satisfacen el proceso de reglamentación informal necesario para conferirle validez y fuerza de ley a una regla administrativa. En fin, los referidos pronunciamientos, al ser reglas no-legislativas, constituían meras declaraciones tentativas de política pública de la Administración de Corrección que podían ser variadas en el futuro. Por ende, los convictos no tenían un derecho a confiar en los mismos.

debido proceso de ley. <u>Santiago Declert y Albanesi v. Departamento de la Familia</u>, *supra*. Por ende, concluimos que la Administración de Corrección podía válidamente ordenar el reingreso a prisión de los convictos sin violarles su debido proceso de ley.

Resulta importante, además, señalar que el Estado tenía un interés apremiante en corregir dicho error administrativo, a saber: asegurar que los convictos de asesinato, la más grave ofensa que puede cometerse en nuestro ordenamiento, cumplan una porción sustancial de sus condenas en prisión. No podemos decir que corregir un error cometido por la agencia mediante el cual se les dejó en libertad erróneamente constituya una actuación gubernamental que "estremezca la conciencia" hasta el punto de lesionar derechos fundamentales profundamente arraigados en las tradiciones e historia de nuestro pueblo. Por ende, no encontramos impedimento para que la Administración de Corrección ordene el reingreso a prisión de los convictos en el presente caso.

D.

Es necesario aclarar que en el presente caso, contrario a lo que sostienen los convictos, no es de aplicación ni el principio retroactividad de la ley penal más favorable ni la doctrina de impedimento colateral por sentencia.

Como bien es sabido, el principio de favorabilidad no es de rango constitucional. Por ende, es permisible

restringir mediante legislación el alcance del mismo. Pueblo v. Alexander González Ramos, 2005 TSPR 134, res. el 16 de septiembre de 2005. Precisamente eso fue lo que hizo la Asamblea Legislativa con la Ley Núm. 49 de 1995. A estos efectos, en el Artículo 4 de la ley se dispone expresamente que "las disposiciones de esta Ley aplicarán a todos los convictos cumpliendo sentencia bajo custodia y supervisión de la Administración de Corrección".

Resulta claro que mediante dicha disposición la Asamblea Legislativa tenía la intención de aplicarle la Ley Núm. 49 de 1995 a todos los convictos de asesinato independientemente de la fecha de sus respectivas convicciones. La Rama Legislativa tiene autoridad para enmarcar el ámbito de aplicación en el tiempo de los estatutos siempre y cuando al así hacerlo no violente la cláusula contra leyes *ex post facto*. No vemos razón por la cual el principio de favorabilidad sea óbice para ello.[12]

De otra parte, nos parece inmeritorio el planteamiento de los convictos de que, en virtud de ciertas sentencias emitidas por el Tribunal de Primera

---

[12] Debemos señalar, además, que el Reglamento núm. 5065 que le concedía a los convictos la posibilidad de cualificar para el privilegio de libertad bajo supervisión electrónica constituye una "ley intermedia" a los fines del principio de favorabilidad. Ello se debe a que dicha regulación no estaba vigente ni al momento de cometerse los hechos, ni al momento de sentenciar a los convictos, ni al momento en que se les concedió erróneamente la libertad bajo el referido programa. Las leyes intermedias quedan fuera del principio de favorabilidad. Pueblo v. Álvarez Torres, 127 D.P.R. 830 (1991).

Instancia hace aproximadamente diez años,[13] el Estado estaba impedido de reingresarlos a prisión en vista de la doctrina en equidad de impedimento colateral por sentencia. Es un principio ampliamente reconocido que dicha doctrina generalmente no aplica en contra del Estado. Esto se debe a que la misma constituye un remedio en equidad proveniente del derecho común que no puede invocarse cuando con ello se produciría un resultado contrario a la política pública. *Véase a* Vives v. Junta, 24 D.P.R. 669 (1916).

Es indudable que la clara política pública según evidenciada por los términos expresos de la Ley Núm. 49 de 1995 es que los convictos de asesinato no cualifican, por razones de seguridad, para el privilegio de libertad bajo supervisión electrónica. Las sentencias en las que se basan los convictos para apoyar sus planteamientos son contrarias a dicha política. Por tanto, no podemos ampararnos en la doctrina de impedimento colateral por sentencia para prohibirle al Estado corregir su error y relitigar un asunto con el propósito de hacer valer la referida política pública.

E.

Antes de finalizar, debemos expresar que es difícil no sentir simpatía ante los convictos que acuden ante nos en el presente caso. Es innegable que tanto para ellos

---

[13] En dichas sentencias el foro de instancia concluyó que la Ley Núm. 49 de 1995 no podía aplicarse a convictos como los del caso de autos pues ello violaría la protección contra leyes *ex post facto*.

como para sus familiares y amigos no es fácil comprender porqué deben reingresar a prisión luego de haber disfrutado de los beneficios de la libertad durante varios años. Sin embargo, no podemos permitir que la empatía nuble el hecho innegable de que los convictos que acuden ante nos no tenían derecho a ser puestos en libertad bajo supervisión electrónica ni en el momento en que cometieron los hechos ni en el momento en que efectivamente se les concedió dicho privilegio. Por ende, resulta inevitable concluir que se les podía constitucionalmente ordenar el reingreso a prisión con el propósito de corregir el error cometido por la Administración de Corrección al concederle la libertad sin apoyo en ley para ello.

No obstante lo anterior, los convictos aún no han agotado todas las vías que tienen disponibles para lograr su excarcelación. A estos efectos, podrían solicitarle al Primer Ejecutivo una conmutación de su Sentencia o un cambio en las condiciones de la misma. Por otro lado, la Asamblea Legislativa podría concederle retroactivamente a los convictos de asesinato la posibilidad de participar en el programa de libertad bajo supervisión electrónica. Sin embargo, desde este estrado apelativo no procede concederles lo solicitado pues, de así hacerlo, estaríamos dándole fuerza de ley a una actuación administrativa contraria al mandato expreso de la

Asamblea Legislativa según plasmado en la Ley Núm. 49 de 1995.

### IV.

En consideración a los fundamentos anteriormente esbozados, confirmamos el dictamen emitido por el Tribunal de Apelaciones en el caso de epígrafe.


Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Efraín González Fuentes; | * | |
| José M. Urbina Pérez; | * | |
| Ricardo Marrero Vázquez; | * | |
| Benjamín Alers Rodríguez; | * | |
| Héctor L. Quiñones Andino; | * | |
| Melvin Suárez Fernández; | * | |
| Edgardo Rivera Borrero; | * | AC-2005-48 |
| Rafael Rivera Pérez; | * | |
| Arsenio Sánchez Rodríguez; | * | |
| Andrés Candelario Agosto; | * | |
| Jorge L. De Jesús Rivera; | * | |
| José R. Rivera Torres; | * | |
| Julio Alberto Medina Medina; | * | |
| Carlos Delgado Rivera | * | |
| | * | |
| Peticionarios-Apelantes | * | Apelación |
| | * | |
| v. | * | |
| | * | |
| Estado Libre Asociado de P.R.; | * | |
| Administración de Corrección; | * | |
| Administrador de Corección, | * | |
| Lic. Miguel A. Pereira Castillo; | * | |
| Superintendente de Bayamón 501, | * | |
| Sr. Sixto Marrero y | * | |
| Superintendente de Bayamón 308, | * | |
| Sr. Roberto del Valle Navarro | * | |
| | * | |
| Demandados-Apelados | * | |

********************************

SENTENCIA


San Juan, Puerto Rico a 29 de marzo de 2006.


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma el dictamen emitido por el Tribunal de Apelaciones en el caso de epígrafe.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo