El Juez Asociado Señor Fuster Berlingeri
emitió la opi-nión del Tribunal.
Tenemos la ocasión para precisar el alcance de la limi-tación al Programa de Supervisión Electrónica impuesta por la Ley Núm. 49 de 26 de mayo de 1995 (4 L.P.R.A. see. 1112 et seq.).

I

Henock Corretger Cruz fue sentenciado el 14 de enero de 1996 a cumplir una pena de prisión de 99 años por ha- *322 ber sido encontrado culpable de cometer los delitos de ase-sinato en primer grado, conspiración e infracciones a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sees. 416 y 418, todo ello por hechos ocurridos el 13 de enero de 1988. Luego de haber cumplido varios años de reclusión, en enero de 2005 el convicto fue evaluado para determinar si cualificaba para beneficiarse del llamado Programa de Supervisión Electrónica. Dicho programa fue establecido en virtud de la autorización conferida a la Ad-ministración de Corrección por su Ley Orgánica, Ley Núm. 116 de 22 de julio de 1974 (4 L.P.R.A. sec. 1112(e)). El pro-grama referido, según había sido creado el 15 de abril de 1992, no excluía a las personas convictas de asesinato.(1) Sin embargo, antes de que Corretger Cruz fuera sentenciado por los hechos delictivos por los que fue convicto, la Asamblea Legislativa aprobó la Ley Núm. 49, supra, para enmendar la Ley Orgánica de la Administración de Corrección. Entre otros cambios, el estatuto referido ex-cluyó a las personas convictas de asesinato de participar en el Programa de Supervisión Electrónica. (2)
En vista de lo anterior, el 29 de abril de 2005 la Admi-nistración de Corrección concluyó finalmente que Corret-ger Cruz no cualificaba para participar en el Programa de Supervisión Electrónica, pues, por las disposiciones de la citada Ley Núm. 49, el programa excluía a convictos como *323 él. Corretger Cruz, entonces, recurrió de tal determinación ante el Tribunal de Apelaciones.
El foro apelativo resolvió que la Administración de Co-rrección había aplicado retroactivamente una ley penal, en violación de la disposición sobre leyes ex post facto de la Constitución del Estado Libre Asociado de Puerto Rico y el principio de favorabilidad del Código Penal. Por ello, el 16 de agosto de 2005 revocó la resolución recurrida y devolvió el caso a la Administración de Corrección para que proce-diera a evaluar al convicto para su participación en el Pro-grama de Supervisión Electrónica.
Inconforme con tal dictamen, el 14 de octubre de 2005 Procurador General recurrió ante nosotros y planteó lo si-guiente:
Erró el Tribunal de Apelaciones al determinar que la aplica-ción en este caso de la Ley Núm. 49 de 26 de mayo de 1995 violenta la prohibición constitucional sobre leyes ex post facto. Erró el Tribunal de Apelaciones al dictar la sentencia recu-rrida sin tomar en consideración que la Ley Núm. 49 no es un estatuto penal, sino una ley de naturaleza administrativa, que únicamente establece categorías, de manera razonable, a los fines de disponer que los convictos por determinados delitos estén excluidos de los programas de desvío; ello como parte de un esquema regulador de las facultades del Administrador del sistema correccional en nuestra jurisdicción, que adelanta el apremiante interés gubernamental de preservar la seguridad pública, sin perseguir un fin punitivo.
Erró el Tribunal de Apelaciones al resolver que en este caso aplica el principio de favorabilidad establecido en el Código Penal. Petición de certiorari, págs. 4 — 5.
El 3 de febrero de 2006 expedimos el recurso presentado por el Procurador General para revisar la sentencia dic-tada por el foro apelativo el 16 de agosto de 2005 y resolver lo que en Derecho procediese.
El 19 de mayo de 2006 el Procurador General presentó su alegato El 7 de julio de ese año, luego de una prórroga, el recurrido presentó el suyo. Pasamos a resolver.
*324 II
En esencia, la primera controversia planteada en el caso de autos es si la prohibición constitucional sobre la aplica-ción retroactiva de leyes ex post facto impide la aplicación de la Ley Núm. 49, supra, al recurrido, en cuanto le hace "no elegible” para participar en el Programa de Supervi-sión Electrónica.
Según hemos establecido, para que se active la protección constitucional contra leyes ex post facto es necesario que el estatuto que pretende aplicarse retroactivamente sea más oneroso para el imputado que el que estaba vigente a la fecha en que se cometió la ofensa. Así lo señalamos recientemente en nuestra extensa discusión sobre las leyes ex post facto en González v. E.L.A., 167 D.P.R. 400 (2006). El referido requisito está claramente ausente en el caso de autos porque cuando se cometieron los hechos delictivos pertinentes aquí —en 1988— no existía ningún Programa de Supervisión Electrónica, mucho menos el que Corretger Cruz invoca ahora. Como no había programa pertinente alguno a la fecha en que se cometió la ofensa, no puede alegarse que el programa vigente es más oneroso que el que existía entonces. Por ende, tal como resolvimos en González v. E.L.A., supra, no existe la violación a la disposición constitucional sobre leyes ex post facto alegada por el convicto. Erró el foro apelativo al resolver que hubo tal violación a la disposición constitucional referida.
HH í — i
El foro apelativo también intentó fundamentar su dicta-men en el caso de autos a base del llamado principio de favorabilidad de nuestro derecho penal.(3) Sin embargo, no *325 sabemos precisamente cuál fue el razonamiento de dicho foro al invocar el principio referido, en vista de que sólo hay una breve oración en toda la sentencia del Tribunal de Apelaciones impugnada aquí sobre el particular. Esta sólo dice: “El Art. 9 del nuevo Código Penal también establece el principio de la aplicación de la ley más favorable a las personas condenadas de delito.”
Aunque no conocemos qué quiso decir exactamente el foro apelativo con la críptica oración aludida, no estamos impedidos de revisar cabalmente. Ello porque los tajantes términos de la Ley Núm. 49 mencionada antes y su historial la hacen aplicable a todos los convictos de asesinato, sin que pueda distinguirse entre ellos a base de las fechas de la comisión del delito, de su procesamiento o de la imposición de la sentencia o su cumplimiento. Dicha Ley Núm. 49, aprobada con vigencia inmediata antes de que el recurrido fuese sentenciado, tiene un artículo que trata sobre su aplicabilidad, y allí se dispone claramente que “las disposiciones de esta ley aplicarán a todos los convictos cumpliendo sentencia bajo la custodia y supervisión de la Administración de Corrección”. (Énfasis suplido.) Art. 4 de la Ley Núm. 49, supra, 4 L.P.R.A. sec. 1112 n. El claro tenor de lo ordenado por el legislador hace inaplicable aquí el llamado principio de favorabilidad. No hay una “ley más benigna” que se pueda invocar porque la Ley Núm. 49, supra, impone una exclusión que atañe a todo aquel sentenciado por asesinato a partir de la vigencia de dicha ley. El privilegio de la supervisión electrónica sencillamente no está ya disponible para ningún convicto de asesinato.
El asunto de la libertad al amparo de supervisión elec-trónica, como el tema de los llamados “programas de des-vío” en general, fueron objetos de mucha discusión pública años atrás, gran parte de ella de tono muy agrio. Sectores importantes de la opinión pública clamaron por una polí-tica de “mano dura contra el crimen”. En ese contexto *326 histórico se aprobó la ley que aquí nos concierne, con el propósito claro de corregir lo que se tildó de “abusos ... en los programas de liberación de reclusos”; es decir, de des-continuar la supuesta práctica de “echar confinados a la calle que se convierten en riesgo para la sociedad”. Varios legisladores reiteraron en mayo de 1995 su claro intento de conjurar “la práctica muy impropia de tener asesinos en al calle ... que pondrían en peligro a las personas decentes de este País. ... [D]e evitar que a criminales los echen [a la calle] antes de ser rehabilitados”. Véase XLVI (Núm. 27) Diario de Sesiones, págs. 17963-17966 (1995).
A la luz de este claro historial, pues, no cabe duda al-guna de la clara intención legislativa de establecer una prohibición absoluta a conceder el privilegio de libertad al amparo de la supervisión electrónica a persona alguna que a partir de 1995 haya sido convicta de asesinato u otros delitos graves enumerados en la citada Ley Núm. 49. Frente a este contundente historial, no hay principio de favorabilidad que pueda prevalecer, tal como lo intimamos en González v. E.L.A., supra.
Erró también, pues, el foro apelativo al invocar el prin-cipio de favorabilidad en el caso de autos.
IV
Por los fundamentos expuestos, se revoca el dictamen del Tribunal de Apelaciones que aquí nos concierne y se confirma la decisión de la Administración de Corrección de que el convicto, en este caso, está impedido de disfrutar del privilegio de la supervisión electrónica, en virtud de lo que claramente ordena la Ley Núm. 49, supra.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Rivera Pérez concurrió sin opinión.

 La Administración de Corrección implantó por primera vez el 14 de julio de 1989 un programa para la liberación de algunos confinados bajo supervisión electrónica. Este programa fue derogado el 15 de abril de 1992, cuando se creó como tal el Programa de Supervisión Electrónica mediante un memorando normativo. Posteriormente, este programa fue a su vez anulado por no cumplir con la Ley de Procedimiento administrativo Uniforme del Estado Libre Asociado de Puerto Rico.

 Mediante el Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, Reglamento Núm. 6041 de 26 de noviembre de 1999, la Administración de Corrección incorporó las exclusiones contenidas en al referida Ley Núm. 49 de 26 de mayo de 1995 (4 L.P.R.A. see. 1112 et seq.). Así cambió el Regla-mento para Establecer el Procedimiento para el Programa de Supervisión Electró-nica, Reglamento Núm. 5065 de 3 de junio de 1994, el cual no excluía el asesinato del beneficio de supervisión electrónica.

 En esencia, el principio referido dispone que si la ley penal vigente al impo-nerse una sentencia, o durante la condena, fuese distinta a la ley vigente al come-terse el delito, se impondrá la ley más benigna. Véase Art. 9 de la Ley Núm. 149 del 18 de junio de 2004, (33 L.P.R.A. see. 4637).