ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| EL PUEBLO DE PUERTO RICO<br><br>Parte Recurrida<br><br>V.<br><br><br>WILSON RIVERA CRESPO<br><br>Parte Peticionaria | TA2025CE00882 | *REVISIÓN JUDICIAL* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br>_____<br>Caso Núm.: ILE2001G0061 al ILE2001G0064 ILE2001G0260 IPD01M0017<br><br>_____<br>SOBRE:<br>ART. 3.5 (2) LEY 54 Y OTROS |
|---|---|---|

Panel integrado por su presidenta la Juez Brignoni Mártir, el Juez Salgado Schwarz y la Juez Aldebol Mora.

Salgado Schwarz, Carlos G., Juez Ponente

# **S E N T E N C I A**

En San Juan, Puerto Rico, a 20 de enero de 2026.

Comparece el señor Wilson Rivera Crespo ("Sr. Rivera" o "Peticionario") y nos solicita que revoquemos la Resolución y Orden dictada el 6 de noviembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez ("foro de instancia" o "foro recurrido") en donde declaró *No Ha Lugar* la solicitud presentada por el Peticionario. En dicha solicitud, el Sr. Rivera solicitó al foro de instancia que emitiera una Resolución final en todos los casos dando por terminados los mismos de manera retroactiva a la fecha en la cual expiró la sentencia. Además, solicitó que, habiendo transcurrido diez (10) años del cumplimiento de su sentencia, se ordene la remoción de su nombre del Registro de Ofensores Sexuales.

Por los fundamentos que exponemos a continuación, **expedimos** el auto de *certiorari* y se **confirma** la resolución recurrida.

-I-

A continuación, detallamos los hechos pertinentes a la controversia ante nuestra consideración.

El 18 de octubre de 2001, el Peticionario fue sentenciado por los siguientes delitos[1]: Artículo 172 del Código Penal de 1974 y Artículos 3.1, 3.2, 3.3 y 3.5 de la *Ley para la Prevención e Intervención con la Violencia Doméstica*[2] ("Ley 54-1989"). La Sentencia en libertad a prueba finalizó el 18 de octubre de 2012 de conformidad con el *Certificado de Expiración de Libertad a Prueba*[3] expedido por el Departamento de Corrección y Rehabilitación el 19 de octubre de 2012.

El 30 de abril de 2025, el Peticionario presentó una *Moción Solicitando Sea Emitida Resolución Final En Estos Casos Por Cumplimiento Total De Condiciones De Sentencias*[4]. Además de la Resolución Final en cada uno de los casos en los cuales fue sentenciado, el Sr. Rivera solicitó que "*habiendo transcurrido el término de diez (10) años, también se le solicita al Honorable Tribunal que REMUEVA del Registro de Ofensores Sexuales al Sr. Rivera Crespo por el cumplimiento de todas sus condiciones impuestas*"[5]. Así las cosas, el Ministerio Público compareció mediante moción en oposición[6]. En esa ocasión, señaló que el Registro no tiene un fin punitivo, sino que es un medio para garantizar la seguridad,

---

[1] Véase Apéndice del recurso de *certiorari*, págs. 9-20.
[2] Ley Núm. 54 de 15 de agosto de 1989, según enmendada.
[3] Véase Apéndice del recurso de *certiorari*, pág. 21.
[4] *Íd.*, págs. 22-23.
[5] *Íd.*, pág. 22.
[6] *Íd.*, págs. 24-26.

protección y bienestar general. Sobre este particular, expresó que la aplicación retroactiva de las enmiendas introducidas por la Ley Núm. 243-2011 – a saber, que todo Ofensor Sexual Tipo III estará inscrito en el Registro de por vida – no viola la prohibición constitucional en contra de la aplicación de leyes *ex post facto*, por no tratarse de una medida punitiva.

El 6 de noviembre de 2025, el foro de instancia emitió una *Resolución y Orden*[7] en la que declaró *No Ha Lugar* la solicitud del Peticionario.

Inconforme con tal determinación, el 10 de diciembre de 2025, el Sr. Rivera acudió ante nos mediante recurso de *certiorari* e hizo el siguiente señalamiento de error:

> **ERRÓ EL TRIBUNAL A QUO EN SU RESOLUCIÓN Y ORDEN AL NO TENER EN CONSIDERACIÓN EL MANDATO CONSTITUCIONAL EXPRESO DE REHABILITACIÓN Y DECLARAR INCONSTITUCIONAL EL PERIODO DE POR VIDA QUE DEBERÁ MANTENERSE UN OFENSOR TIPO III EN EL REGISTRO DE OFENSORES SEXUALES.**

-II-

A. *Certiorari*

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[8]

La Regla 40 del Reglamento del Tribunal de Apelaciones esboza los siete criterios que el tribunal tomará en consideración al determinar la expedición de un auto de *certiorari*. Estos son:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

---

[7] *Íd.*, págs. 1-8.
[8] *Pueblo v. Díaz De León*, 176 DPR 913, 917 (2009).

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[9]

Por tanto, la discreción judicial "*no se da en un vacío ni en ausencia de unos parámetros*", sino que el tribunal revisor debe ceñirse a los criterios antes transcritos.[10]

**B. Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores**

El Registro de Ofensores Sexuales se creó tras la aprobación de la Ley Núm. 28 de 1 de julio de 1997 ("Ley 28-1997"), también conocida como *Ley del Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso contra Menores,* según enmendada. Dicha ley establecía que las personas convictas por los delitos allí contenidos se mantendrían en el Registro de Ofensores Sexuales por un periodo de diez (10) años "*desde que la persona cumplió la sentencia de reclusión, desde que comenzó a cumplir la sentencia bajo el*

---

[9] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 60, 215 DPR ___ (2025).
[10] *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011).

*beneficio de libertad a prueba o desde que es liberada bajo palabra*"[11]. A su vez, disponía que, una vez transcurrido este término, el nombre y los datos del convicto serían eliminados del Registro de Ofensores Sexuales[12]. Posteriormente, la Ley Núm. 28-1997 fue derogada por la Ley Núm. 266 de 9 de septiembre de 2004 ("Ley 266-2004"), también conocida como *Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores*. En esta se estableció como política pública que el Registro no tenía un propósito punitivo, sino que pretendía garantizar la seguridad y el bienestar general de la población más vulnerable de la sociedad[13]. Además, la nueva ley mantuvo la obligación de permanecer inscrito en el Registro de Ofensores Sexuales, pero por un "*período mínimo de diez (10) años desde que cumplió la sentencia impuesta*"[14]. A su vez impuso el requisito de actualizar la información en el Registro anualmente[15].

Posteriormente, la Ley 266-2004 fue sustancialmente enmendada por la Ley Núm. 243 de 14 de diciembre de 2011 ("Ley 243-2011"). El propósito de la referida legislación fue atemperar el estatuto local a la ley federal "*Adam Walsh Child Protection and Safety Act of 2006*", también conocida como el "*Sex Offender Registration and Notification Act* (SORNA)"[16]. En esta, se reiteró, una vez más, que el Registro de Ofensores Sexuales no tenía un propósito punitivo, sino que era un medio por el cual el Estado podía velar por la seguridad, protección y bienestar de la ciudadanía[17].

---

[11] Véase Art. 5 de la Ley Núm. 28-1997.
[12] *Íd.*
[13] Véase Art. 1 de la Ley Núm. 266-2004.
[14] Véase Art. 5 de la Ley Núm. 266-2004.
[15] *Íd.*
[16] Véase Exposición de Motivos de la Ley Núm. 243-2011.
[17] *Íd.*

La Ley 243-2011 clasificó los ofensores sexuales en tres categorías de acuerdo con el delito sexual cometido[18]. Bajo las mencionadas clasificaciones, la ley estableció que el Ofensor Sexual Tipo I debía permanecer inscrito y cumplir con los requisitos por un periodo de quince (15) años, mientras que el Ofensor Sexual Tipo II debía cumplir por un término de veinticinco (25) años y el Ofensor Sexual Tipo III, de por vida[19]. Por otro lado, la referida ley también dispuso que quedarían registradas "*las personas que, al momento de la aprobación de esta ley, tenían la obligación de registrarse bajo la Ley 28-1997, según enmendada.*"[20].

## C. Leyes *ex post facto*

Es ampliamente conocido que nuestra Constitución prohíbe la aplicación de leyes *ex post facto*[21]. Según ha interpretado el Tribunal Supremo de Puerto Rico existen cuatro tipos de estatutos que se han catalogado como *ex post facto*, en términos de la aplicación de esta norma. Estas son:

> (1) leyes que criminalizan y castigan un acto que al ser realizado no era delito; (2) leyes que agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; (3) leyes que alteran el castigo imponiendo una pena mayor que la fijada para el delito al momento de ser cometido; y (4) leyes que alteran las reglas de evidencia exigiendo menos prueba que la requerida por ley al momento de la comisión del delito para castigar al acusado o reduciendo el quántum de evidencia necesario para encontrarlo culpable[22].

El propósito de la prohibición constitucional contra leyes *ex post facto* es garantizarles a los ciudadanos que los estatutos proveerán una advertencia

---

[18] 4 LPRA sec. 536.
[19] 4 LPRA sec. 536c.
[20] 4 LPRA sec. 536a (e).
[21] Art. II, Sec. 12, Const. ELA, LPRA, Tomo 1; *González v. E.L.A.*, 167 DPR 400, 408 (2006).
[22] *Íd.*

adecuada de la conducta a prohibirse y sus consecuencias penales antes de que se incurra en dicha conducta[23]. Sin embargo, cabe aclarar que esta protección se activa únicamente si se pretende aplicar una ley penal de forma retroactiva cuando la ley vigente al momento de la comisión del acto resulte más favorable[24]. Así pues, para cuestionar la aplicabilidad de una ley al amparo de esta doctrina se requiere, no sólo que se haya aplicado una ley retroactivamente, sino que la ley aplicada resulte más onerosa que la vigente al momento de la comisión del acto[25]. Además, debemos señalar que, la referida protección constitucional "*no se activa mediante la aplicación o derogación retroactiva de órdenes administrativas, declaraciones de política pública o reglas interpretativas*"[26].

En materia de decisiones judiciales relacionadas al derecho penal sustantivo, el debido proceso de ley impide la aplicación retroactiva si tal determinación:

> (1) altera la definición de un delito; (2) brinda una nueva interpretación a un estatuto de manera que expone al acusado a una ofensa que era imprevista al momento de los hechos; (3) si se aplica a eventos que ocurrieron antes de publicarse la opinión; (4) o si coloca al ofensor en una posición de desventaja frente a la interpretación anterior[27].

La prohibición de leyes *ex post facto* alcanza únicamente a aquellos estatutos que perjudican o desprotegen a una persona que enfrenta un procedimiento penal[28]. Es decir, debe tratarse de un estatuto que

---

[23] *Íd.*
[24] *Íd.*, págs. 408-409; *Corretger v. Adm. Corrección*, 172 DPR 320, 325 (2007).
[25] *González v. E.L.A.*, supra, págs. 408-409.
[26] *Íd.*, pág. 410; *Pueblo v. Thompson Faberllé*, 180 DPR 497, 504 (2010).
[27] *Pueblo v. Thompson Faberllé*, supra, pág. 505.
[28] *Collins v. Youngblood*, 497 US 37, 42 (1990).

penaliza una conducta que antes no era penalizada o que hace una pena más gravosa para un convicto[29].

Para determinar si ha habido una aplicación retroactiva de una ley penal, contraria a la protección de las leyes *ex post facto*, es preciso analizar si la ley aplicada es más onerosa que la vigente al momento de los hechos[30]. Para ello, precisa examinar si, "*en comparación con el viejo estatuto, la nueva ley tiene el efecto de alargar el término de reclusión a ser cumplido por el sujeto*"[31]. Por ejemplo, la aplicación retroactiva de una ley que elimina el beneficio de bonificaciones por buen comportamiento a un convicto, beneficio que estaba vigente al momento del acusado cometer el acto delictivo, es una aplicación contraria a la protección contra leyes *ex post facto*[32].

Tampoco procede aplicar retroactivamente alguna ley que le impida a un convicto la posibilidad de ser elegible a la concesión de libertad bajo palabra o supervisión electrónica, pues ello tiene el efecto de alargar el término de reclusión que habrá de cumplir el convicto[33]. Desde esta perspectiva, resulta de particular importancia examinar si, en contraste con la ley anterior, la ley nueva alarga el término de reclusión que cumplirá el convicto[34]. Deben verse también otros criterios, como el que se agrave la pena o la medida de seguridad impuesta.

En *Smith v. Doe*[35], el Tribunal Supremo de Estados Unidos analizó la constitucionalidad del *Alaska Sex*

---

[29] *Íd.*
[30] *González v. ELA*, supra, pág. 409.
[31] *Íd.*
[32] *Íd.*
[33] *Íd.*
[34] *Íd.*, pág. 415.
[35] *Smith v. Doe*, 538 US 84 (2003).

*Offender Registration Act* (ASORA) y determinó que la ley no era punitiva, por lo que su aplicación retroactiva no violaba la protección constitucional federal contra leyes *ex post facto*. Primeramente, examinó la intención legislativa y luego, analizó la ley a la luz de siete factores esbozados en *Kennedy v. Mendoza-Martínez*[36]. De esta forma, concluyó que ASORA perseguía un fin no punitivo, tal y como exponía su intención legislativa. Además, determinó que la publicación en internet del Registro no acarreaba un castigo; que la ley no imponía restricción a las actividades que los ofensores podían realizar, pues estos mantienen libertad de movimiento; y que el esquema regulador estaba relacionado razonablemente al peligro de la reincidencia, fin ulterior que el Estado pretendía prohibir.

Respecto al propósito no punitivo de la Ley 266-2004, el Tribunal Supremo de Puerto Rico estableció que la inscripción de una persona en el Registro de Ofensores Sexuales surge como consecuencia de una convicción previa por alguno de los delitos estatuidos en la ley[37]. Sin embargo, la Exposición de Motivos de la Ley 266-2004, según enmendada, expresa claramente que el Registro no tiene un propósito punitivo. Esto es, la intención del Estado al ordenar que como parte de su sentencia una persona convicta sea inscrita en el Registro, constituye un castigo.

Así, el Tribunal Supremo de Puerto Rico determinó que la inscripción en el Registro constituye una medida de seguridad que no surge de una ley penal, pero es impuesta como consecuencia del incumplimiento de una ley

---

[36] *Kennedy v. Mendoza-Martínez*, 372 US 144, 168-169 (1963).
[37] *Pueblo v. Hernández García*, 186 DPR 656 (2012).

penal y recae como parte de una sentencia[38]. Posteriormente, nuestro máximo foro judicial aclaró que las enmiendas introducidas por la Ley 243-2011 a la Ley 266-2004 aplicaban retroactivamente, ya que no violan la cláusula sobre leyes *ex post facto*[39].

-III-

En el caso de epígrafe, el Sr. Rivera sostiene que erró el foro de instancia en su determinación al no acoger la petición de eliminar su nombre del Registro de Ofensores Sexuales luego de haber transcurrido el término de diez (10) años que establecía la Ley 28-1997, vigente a la fecha de la Sentencia. Además, aduce que la Ley 243-2011 es inconstitucional de su faz por violentar el mandato constitucional que surge del Artículo VI, Sección 19 de nuestra Constitución que tiene como fin la rehabilitación moral y social de los delincuentes. Veamos.

En el caso ante nuestra consideración, la obligación del Sr. Rivera de estar en el registro proviene del Art. 3(e) de la Ley 243-2011. Dicho artículo establece que "*quedarán registradas las personas que, al momento de la aprobación de esta ley, tenían la obligación de registrarse bajo la Ley 28-1997, según enmendada*"[40]. A su vez, nuestro más alto foro resolvió que la aplicación retroactiva de la Ley 243-2011 a aquellas personas con la obligación de inscribirse en el Registro de Ofensores Sexuales bajo la Ley 28-1997, no contraviene la prohibición constitucional contra leyes *ex post facto*. Ello, pues esta es una ley de carácter civil, no punitiva. Conforme a lo anterior, nos resulta

---

[38] *Íd.*, pág. 677.
[39] *Pueblo v. Ferrer Maldonado*, 201 DPR 974, 999 (2019).
[40] 4 LPRA sec.536a (e).

forzoso concluir que las disposiciones de la Ley 266-2004, según enmendada por la Ley 243-2011, son aplicables al Peticionario.

Del expediente se desprende que el Sr. Rivera fue sentenciado por varios delitos, entre ellos, dos infracciones al Artículo 3.5 de la Ley 54-1989, según enmendada. De conformidad con la Ley 243-2011, tales infracciones convierten al Peticionario en un Ofensor Sexual Tipo III y tiene que permanecer inscrito en el Registro de Ofensores Sexuales de por vida.

A la luz de las circunstancias del presente caso, este Tribunal no ha encontrado indicio alguno de que el foro de instancia haya actuado de manera arbitraria o caprichosa, en abuso de discreción o que haya cometido algún error de derecho.

-IV-

A la luz de los fundamentos antes expresados, se **expide** el auto de *certiorari* y se **confirma** la resolución recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

*Lcda. Lilia M. Oquendo Solís*
*Secretaria del Tribunal de Apelaciones*