EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Henock Corretger Cruz<br><br>Recurrido<br><br>vs.<br><br>Administración de Corrección<br><br>Peticionaria | Certiorari<br><br>2007 TSPR 179<br><br>172 DPR _____ |

Número del Caso: CC-2005-979

Fecha: 17 de octubre de 2007

Tribunal de Apelaciones:

      Región Judicial de San Juan, Panel XIV

Juez Ponente:

      Hon. German J. Brau Ramírez

Oficina del Procurador General:

      Lcda. Amir Cristina Nieves Villegas
      Procuradora General Auxiliar

Abogado de la Parte Recurrida:

      Por Derecho Propio

Materia: Revisión de Decisión Administrativa de la Administración de Corrección

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Henock Corretger Cruz

    Recurrido

       vs.                  CC-2005-979      Certiorari

Administración de Corrección

    Peticionaria

Opinión del Tribunal emitida por el Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 17 de octubre de 2007.

Tenemos la ocasión para precisar el alcance de la limitación al Programa de Supervisión Electrónica impuesta por la Ley Núm. 49 de 26 de mayo de 1995.

I.

Henock Corretger Cruz fue sentenciado el 14 de enero de 1996 a cumplir una pena de prisión de 99 años por haber sido encontrado culpable de cometer los delitos de asesinato en primer grado, conspiración, e infracciones a los Artículos 6 y 8 de la Ley de Armas. Todo ello por hechos ocurridos el 13 de enero de 1988.

Luego de haber cumplido varios años de reclusión, en enero de 2005, el convicto fue evaluado para determinar si cualificaba para beneficiarse del llamado Programa de Supervisión Electrónica. Dicho programa fue establecido en virtud de la autorización conferida a la Administración de Corrección por su Ley Orgánica, Ley Núm. 116 de 22 de julio de 1974, 4 L.P.R.A. sec. 1112 (e). El programa referido, **según había sido creado el 15 de abril de 1992**, no excluía a las personas convictas de asesinato.[1] Sin embargo, **antes de Corretger Cruz ser sentenciado por los hechos delictivos por los que fue convicto**, la Asamblea Legislativa aprobó la Ley Núm. 49 de 26 de mayo de 1995, para enmendar la Ley Orgánica de la Administración de Corrección. Entre otros cambios, el estatuto referido **excluyó a las personas convictas de asesinato** de participar en el Programa de Supervisión Electrónica.[2]

En vista de lo anterior, el 29 de abril de 2005 la Administración de Corrección concluyó finalmente que Corretger Cruz no cualificaba para participar en el Programa de Supervisión Electrónica, pues, por las

_____

[1] La Administración de Corrección implantó por primera vez un programa para la liberación de **algunos confinados** bajo supervisión electrónica el 14 de julio de 1989. Este programa fue derogado el 15 de abril de 1992, cuando se creó como tal el Programa de Supervisión Electrónica, mediante un memorando normativo. Posteriormente este Programa fue a su vez anulado, por no cumplir con la Ley de Procedimiento Administrativo Uniforme.

[2] Mediante el Reglamento 6041 del 26 de noviembre de 1999, la Administración de Corrección incorporó las exclusiones contenidas en al referida Ley Núm. 49 de 1995. Así cambió el Reglamento 5065 de 3 de junio de 1994, el cual no excluía el asesinato del beneficio de supervisión electrónica.

disposiciones de la citada Ley Núm. 49, éste excluía a convictos como él. Corretger Cruz entonces recurrió de tal determinación ante el Tribunal de Apelaciones.

El foro apelativo resolvió que la Administración de Corrección había aplicado retroactivamente una ley penal, en violación de la disposición sobre leyes *ex post facto* de la Constitución del Estado Libre Asociado de Puerto Rico y el principio de favorabilidad del Código Penal. Por ello, el 16 de agosto de 2005 revocó la resolución recurrida y devolvió el caso a la Administración de Corrección para que procediera a evaluar al convicto, en sus méritos, para su participación en el Programa de Supervisión Electrónica.

Inconforme con tal dictamen, el 14 de octubre de 2005 Procurador General recurrió ante nos y planteó lo siguiente:

1. Erró el Tribunal de Apelaciones al determinar que la aplicación en este caso de la Ley Núm. 49 de 26 de mayo de 1995 violenta la prohibición constitucional sobre leyes *ex post facto*.

2. Erró el Tribunal de Apelaciones al dictar la sentencia recurrida sin tomar en consideración que la Ley Núm. 49 no es un estatuto penal, sino una ley de naturaleza administrativa, que únicamente establece categorías, de manera razonable, a los fines de disponer que los convictos por determinados delitos estén excluidos de los programas de desvío; ello como parte de un esquema regulador de las facultades del Administrador del sistema correccional en nuestra jurisdicción, que adelanta el apremiante interés gubernamental de preservar la seguridad pública, sin perseguir un fin punitivo.

3. Erró el Tribunal de Apelaciones al resolver que en este caso aplica el principio de favorabilidad establecido en el Código Penal.

El 3 de febrero de 2006 expedimos el recurso presentado por el Procurador General, a fin de revisar la sentencia dictada por el foro apelativo el 16 de agosto de 2005 y resolver lo que en Derecho procediese.

El 19 de mayo de 2006 el Procurador General presentó su alegato; y el 7 de julio de ese año, luego de una prórroga, el recurrido presentó el suyo. Pasamos a resolver.

II

En esencia, la primera controversia planteada en el caso de autos es si la prohibición constitucional sobre la aplicación retroactiva de leyes *ex post facto* impide la aplicación de la Ley Núm. 49, *supra*, al recurrido, en cuanto le hace "no elegible" para participar en el Programa de Supervisión Electrónica.

Según hemos establecido antes, para que se active la protección constitucional contra leyes *ex post facto* es necesario que el estatuto que pretende aplicarse retroactivamente sea más oneroso para el imputado que el que estaba vigente a la fecha en que se cometió la ofensa. Así lo señalamos recientemente, en nuestra extensa discusión sobre las leyes *ex post* facto en González v. E.L.A., res. el 29 de marzo de 2006, 167 D.P.R. ___ (2006), 2006 TSPR 44, 2006 JTS 53. El referido requisito está

claramente ausente en el caso de autos porque cuando se cometieron los hechos delictivos pertinentes aquí en 1988 no existía ningún Programa de Supervisión Electrónica, mucho menos el que Corretger Cruz invoca ahora. Como no había programa pertinente alguno a la fecha en que se cometió la ofensa, no puede alegarse que el programa vigente es más oneroso que el que existía entonces. Por ende, tal como resolvimos en González v. E.L.A., *supra*, no existe la violación a la disposición constitucional sobre leyes *ex post facto* alegada por el convicto. Erró el foro apelativo al resolver que hubo tal violación a la disposición constitucional referida.

III

El foro apelativo también intentó fundamentar su dictamen en el caso de autos a base del llamado principio de favorabilidad de nuestro Derecho Penal.[3] Sin embargo, no sabemos precisamente cuál fue el razonamiento de dicho foro al invocar el principio referido, en vista de que sólo hay una breve oración en toda la sentencia del Tribunal de Apelaciones impugnada aquí sobre el particular. Ésta sólo dice: "El Art. 9 del nuevo Código Penal también establece el principio de la aplicación de la ley más favorable a las personas condenadas de delito."

---

[3] En esencia, el principio referido dispone que si la ley penal vigente al imponerse una sentencia, o durante la condena, fuese distinta a la ley vigente al cometerse el delito, se impondrá la ley más benigna. Véase, Art. 9 de la Ley Núm. 149 del 18 de junio de 2004, 33 L.P.R.A. sec. 4637.

Aunque no conocemos qué quiso decir exactamente el foro apelativo con la críptica oración aludida, no estamos impedidos de revisar cabalmente. Ello, porque los tajantes términos de la Ley 49 mencionada antes y su historial la hacen aplicable **a todos los convictos de asesinato**, sin que pueda distinguirse entre ellos a base de las fechas de **la comisión del delito, de su procesamiento, de la imposición de la sentencia o del cumplimiento de la misma**. Dicha Ley 49, aprobada con vigencia inmediata antes de que el recurrido fuese sentenciado, tiene un artículo que trata sobre su aplicabilidad y allí se dispone claramente que **"las disposiciones de esta ley aplicarán a todos los convictos cumpliendo sentencia bajo la custodia y supervisión de la Administración de Corrección."** El claro tenor de lo ordenado por el legislador hace inaplicable aquí el llamado principio de favorabilidad. No hay una "ley más benigna" que se pueda invocar porque la Ley 49 impone una exclusión que atañe a todo aquel sentenciado por asesinato a partir de la vigencia de dicha ley. **El privilegio de la supervisión electrónica sencillamente no está ya disponible para ningún convicto de asesinato.**

El asunto de la libertad al amparo de supervisión electrónica, como el tema de los llamados programas de desvío en general, fueron objetos de mucha discusión pública años atrás, gran parte de ella de tono muy agrio. Sectores importantes de la opinión pública clamaron por una política de **"mano dura contra el crimen"**. En ese contexto histórico se aprobó la ley que aquí nos concierne, con el

propósito claro de corregir lo que se tildó de "abusos. . . en los programas de liberación de reclusos"; es decir, de descontinuar la supuesta práctica de "echar confinados a la calle que se convierten en riesgo para la sociedad." Unos legisladores y otros reiteraron en mayo de 1995 su claro intento de conjurar "la práctica muy impropia de tener asesinos en al calle. . . que pondrían en peligro a las personas decentes de este País." . . . "[D]e evitar que a criminales los echen [a la calle] antes de ser rehabilitados." Véase, **XLVI Diario de Sesiones**, Núm. 27, Lexis, 30 de marzo de 1995, págs. 17963-17966.

A la luz de este claro historial, pues, no cabe duda alguna de la clara intención legislativa de establecer una prohibición absoluta a conceder el privilegio de libertad al amparo de la supervisón electrónica a persona alguna que a partir del 1995 haya sido convicta de asesinato u otros delitos graves enumerados en la citada Ley 49. Frente a este contundente historial, no hay principio de favorabilidad que pueda prevalecer, tal como lo intimamos en González v. E.L.A., *supra.*

Erró también, pues, el foro apelativo al invocar el principio de favorabilidad en el caso de autos.

IV

Por los fundamentos expuestos, se revoca el dictamen del Tribunal de Apelaciones que aquí nos concierne, y se confirma la decisión de la Administración de Corrección de que el convicto en este caso está impedido de disfrutar del

CC-2005-979                    8

privilegio de la supervisión electrónica, en virtud de lo que claramente ordena la Ley 49 del 26 de mayo de 1995.

Se dictará sentencia de conformidad.


                                    JAIME B. FUSTER BERLINGERI
                                         JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Henock Corretger Cruz

    Recurrido

        vs.                     CC-2005-979        Certiorari

Administración de Corrección

    Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 17 de octubre de 2007.

        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca el dictamen del Tribunal de Apelaciones, Región Judicial de San Juan, emitido el 16 de agosto de 2005 y se confirma la decisión de la Administración de Corrección de que el convicto en este caso está impedido de disfrutar del privilegio de la supervisión electrónica, en virtud de lo que claramente ordena la Ley 49 del 26 de mayo de 1995.

        Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez concurre sin opinión.

                    Aida Ileana Oquendo Graulau
                 Secretaria del Tribunal Supremo