EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Junta de Licenciamiento y Disciplina Médica <br><br> Peticionaria <br><br> V. <br><br> Denys Cabral Jiménez <br> Lic. #15,402 | Certiorari <br><br> 2018 TSPR 164 <br><br> 201 DPR ____ |

Número del Caso: CC-2016-563

Fecha: 2 de octubre de 2018

Tribunal de Apelaciones:

      Región Judicial de San Juan

Oficina del Procurador General

      Lcdo. Luis Román Negrón
      Procurador General

      Lcdo. Guillermo Mangual Amador
      Procurador General Auxiliar

Abogado de la parte recurrida:

      Lcdo. Ramón Cestero Moscoso

Materia: Derecho administrativo: Facultad de la Junta de Licenciamiento y Disciplina Médica para revocar una licencia provisional para ejercer la medicina que se emitió sin cumplir con los requisitos de ley.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Junta de Licenciamiento y
Disciplina Médica

       Peticionaria

CC-2016-0563

       v.

Denys Cabral Jiménez
Lic. #15,402

       Recurrida

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 2 de octubre de 2018.

Ante nosotros acude la Junta de Licenciamiento y Disciplina Médica y nos solicita que revoquemos una sentencia del Tribunal de Apelaciones que ordenó la reinstalación de una licencia médica suspendida que fue alegadamente otorgada por error, pues la doctora no había aprobado una de las reválidas médicas. En vista de que la Junta determinó válidamente que la doctora no obtuvo la nota de pase necesaria y, por ende, no cumplía con los requisitos de ley para ser acreedora de la licencia, revocamos el dictamen del Tribunal de Apelaciones.

I

El 22 de junio de 2004, el entonces Tribunal Examinador de Médicos (TEM) (desde el 1 de enero de 2009, Junta de Licenciamiento y Disciplina Médica) otorgó a la Dra. Denys Cabral Jiménez la licencia para ejercer la medicina general en Puerto Rico. Tres años más tarde, le suspendió sumariamente esa licencia mediante la Resolución 2007-28, tras la querella TEM-Q-2007-51. El TEM fundamentó su decisión en que poseía documentación certificada entregada por el Dr. Rubén Vélez García, consultor a cargo de la reválida, en donde se detalla "la puntuación real" (pero sin especificar cuál fue ni si fue por debajo de la nota de pase) que la doctora Cabral Jiménez obtuvo en uno de los exámenes de reválida. También hizo constar que posee prueba que demuestra que la doctora Cabral Jiménez ayudó a alterar y falsificar documentos relacionados con los resultados de la reválida.

Poco tiempo después, la fiscalía federal presentó acusaciones contra varias decenas de doctores, incluyendo a la doctora Cabral Jiménez, por cargos de: (1) fraude al obtener las calificaciones de la reválida de medicina falsa e ilegalmente y (2) conspiración para defraudar a los Estados Unidos de América. Sin embargo, a petición de la fiscalía, el Tribunal Federal desestimó sin perjuicio los cargos. Luego, la fiscalía sometió una acusación enmendada, que fue desestimada.

En agosto de 2008, el TEM emitió otra resolución de suspensión, Resolución 2008-63, bajo el número de querella TEM-Q-2008-52. No hizo referencia a la querella anterior. En esta resolución, el TEM mencionó expresamente que la doctora Cabral Jiménez no aprobó la reválida de ciencias clínicas que tomó en noviembre de 2003, por lo que no obtuvo su licencia en conformidad con las reglas y la ley. Hizo referencia a la acusación federal contra la doctora Cabral Jiménez por fraude y conspiración, y citó a la doctora a una vista administrativa.

La doctora Cabral Jiménez presentó una moción de desestimación. Sostuvo que el TEM emitió dos resoluciones de suspensión sumaria, una en 2007 y otra en 2008, basadas esencialmente en los mismos hechos. Alegó que no se celebraron las vistas dentro del término reglamentario, por lo que se encontraba suspendida desde 2007, en violación del reglamento del TEM y del debido proceso de ley.

Ante la oposición de la Junta a la moción de desestimación, se señaló una vista para el 17 de marzo de 2009. La doctora Cabral Jiménez planteó que la moción de desestimación se podía resolver sin celebrar una vista. No obstante, la Oficial Examinadora, Lcda. Berta Mainardi Peralta, determinó escuchar la prueba de la Junta para satisfacer el peso de la prueba requerido para la suspensión.

La Junta presentó el testimonio del doctor Vélez García, quien declaró sobre el proceso de calibración de las reválidas, la confidencialidad del trámite, la estricta seguridad del proceso y que él es la única persona que calibra los exámenes. Testificó que, luego de acceder a los archivos de su computadora y de los discos originales que se generaron de la lectura óptica del examen, que es el expediente oficial de la Junta sobre la reválida de ciencias clínicas de noviembre de 2003, concluyó que la doctora Cabral Jiménez obtuvo un resultado de 544 puntos, que está por debajo de la nota de pase de 700 puntos. Declaró, además, que corroboró manualmente la puntuación de 544 a solicitud de la Junta. Al ser confrontado con el documento que la doctora presentó al solicitar su licencia, del que surge que obtuvo 719 puntos, el doctor Vélez García dijo que no lo había visto antes, que no lo generó, que no salió de su archivo electrónico y que no sabía quién lo preparó.

La Oficial Examinadora dio entera credibilidad al testimonio del doctor Vélez García y recomendó en su informe mantener vigente la suspensión sumaria de la licencia hasta la disposición del caso en sus méritos. La Junta acogió esta recomendación mediante la Resolución 2009-15, en el caso TEM-Q-2007-51. La doctora Cabral Jiménez recurrió de esta resolución, pero el Tribunal de Apelaciones confirmó el dictamen de la Junta, por medio de una sentencia el 17 de diciembre de 2009.

El foro apelativo intermedio resolvió que la decisión de suspender sumariamente a la doctora Cabral Jiménez para evitar que continúe ejerciendo la profesión de médico, en lo que se ventilaba la querella administrativa y los casos en la esfera federal, fue válida, oportuna y ampliamente respaldada por prueba sustancial. Entendió que la Junta pudo demostrar, a través de su perito, que la licencia expedida a favor de la doctora Cabral Jiménez fue otorgada erróneamente debido a que los resultados que la doctora presentó al solicitarla eran falsos. El expediente oficial de la Junta contradijo esos resultados.

El Tribunal de Apelaciones incluso comentó que, de un examen visual de la hoja de papel que la doctora Cabral Jiménez utilizó para tratar de demostrar que obtuvo 719 puntos, "surge palmariamente que su nombre consta en un tipo de letra de molde distinta a la de la totalidad del documento" y que "demuestra desviaciones en sentido horizontal, que abonan a la conclusión de que se utilizó el resultado impreso de la reválida de otra persona para sobre imponer el nombre de la Dra. Cabral sobre la identidad de su verdadero recipiente".

El Tribunal de Apelaciones enfatizó que el hecho de que el Tribunal Federal haya desestimado los cargos en contra de la doctora Cabral Jiménez sobre fraude, no impedía que el TEM investigara respecto a los resultados obtenidos en la reválida por la doctora. El tribunal dijo

que el TEM tenía autoridad para actuar a iniciativa propia, tal y como lo hizo.

En cuanto a la duplicidad de querellas, el foro apelativo intermedio concluyó que la mera inadvertencia procesal de no consolidar los casos, no provocó perjuicio real a la doctora Cabral Jiménez. El fin de ambas querellas era el mismo: determinar si la doctora estaba legalmente autorizada a ejercer la profesión. Por eso, ella nunca estuvo en riesgo de perder una misma licencia dos veces.

La doctora Cabral Jiménez acudió ante este Tribunal Supremo mediante petición de *certiorari*, pero proveímos no ha lugar. Así, el dictamen del Tribunal de Apelaciones advino final y firme.

Posteriormente, el 23 de junio de 2011, la doctora Cabral Jiménez solicitó de la Junta la reinstalación de su licencia. Se basó en que las acusaciones federales en su contra fueron archivadas. Sin embargo, el archivo de las acusaciones federales ocurrió antes de la decisión del Tribunal de Apelaciones el 17 de diciembre de 2009. El foro apelativo intermedio evaluó ese planteamiento en aquel momento y lo descartó, pues la Junta tiene facultad para investigar por voluntad propia.

El 21 de marzo de 2012, la doctora Cabral Jiménez presentó una segunda solicitud de reinstalación de su licencia. La Junta le dio dos alternativas: tomar la reválida o solicitar una vista administrativa. La doctora

escogió solicitar la vista. El 14 de septiembre de 2012, el Oficial Examinador, Lcdo. Rafael Machargo Maldonado, celebró una vista evidenciaria y recomendó la restitución inmediata de la licencia de médico a la doctora Cabral Jiménez. Concluyó que no existía evidencia creíble que vinculara a la doctora Cabral Jiménez con el esquema de fraude de las reválidas ni de que esta hubiese alterado de forma alguna el resultado del examen.

La Junta acogió, en parte, las recomendaciones del Oficial Examinador y emitió la Resolución 2012-88. Resolvió extenderle a la doctora Cabral Jiménez una licencia provisional y condicionada a que trabajara en un programa de internado de un año, completara un curso de ética y los créditos requeridos para recertificar su licencia, y que se abstuviera de realizar la práctica privada de la medicina. Dispuso que una vez que la doctora cumpliera con las condiciones, se le otorgaría la licencia permanente para practicar la medicina.

Sin embargo, mientras la doctora realizaba el internado que se le requirió, la Junta emitió la Resolución 2013-61 para iniciar una investigación de todos los médicos sancionados por las discrepancias en las notas de la reválida, incluso respecto a aquellos sobre los que ya se hubiese tomado una acción. El Oficial Examinador, Lcdo. Luis Alvarado Hernández, celebró una vista el 18 de junio de 2014. En reunión ordinaria, y por unanimidad, la Junta siguió la recomendación del Oficial Examinador y

resolvió cancelar permanentemente la licencia de médico asignada originalmente a la doctora Cabral Jiménez. Concluyó, por medio de la Resolución 2014-376, que "[r]esulta[ba] imposible reinstalarle a la parte querellada una licencia que carece de los elementos para ser concedida […]".

La doctora Cabral Jiménez solicitó reconsideración. En síntesis, adujo que no existía prueba fehaciente y robusta que sostuviera la denegatoria de la licencia, puesto que los casos criminales en el foro federal fueron desestimados. Criticó que la Junta basara su dictamen en una supuesta "nueva evidencia" que consistía de un documento inadmisible, no certificado y cuyo origen se desconocía. Señaló que el representante legal de la Junta reconoció que, aun cuando en el expediente obraba un documento sobre la nota de la reválida que indicaba que la doctora reprobó el examen, ese documento no refutaba ni derrotaba el otro documento que sí acreditaba la aprobación de la reválida y que se debía presumir correcto. Cuestionó, además, la pureza de los procedimientos administrativos. La solicitud de reconsideración no recibió respuesta de la Junta.

La doctora Cabral Jiménez recurrió ante el Tribunal de Apelaciones y sostuvo que la Junta confiscó ilegalmente su licencia y que estaba obligada a reinstalársela. Arguyó que la Junta incumplió con su deber ministerial y que, con su dejadez negligente, le violó el debido proceso de ley,

la igual protección de las leyes y la presunción de inocencia. También reiteró los argumentos invocados en la solicitud de reconsideración rechazada.

El Tribunal de Apelaciones revocó la Resolución 2014-376 por medio de una sentencia el 6 de mayo de 2016. Razonó que la Junta actuó arbitrariamente porque desde octubre de 2012 contaba con los documentos incompatibles en cuanto a la nota de la reválida de la doctora Cabral Jiménez. El Tribunal de Apelaciones argumentó que la decisión final sobre esa contradicción y la legitimidad de esos documentos debió hacerse en aquel momento. En vez, la Junta dejó sin efecto las suspensiones previas y resolvió otorgarle una licencia provisional y condicionada. El foro apelativo intermedio sancionó que la Junta incumpliera el acuerdo bajo el pretexto de que la fiscalía federal le entregó información "nueva", porque no lo era.

La Junta acudió ante nos mediante una petición de *certiorari* y alegó que el Tribunal de Apelaciones erró al revocar la resolución de la Junta y ordenar la reinstalación automática de la licencia médica a la doctora Cabral Jiménez. Expedimos el auto de *certiorari* y ambas partes comparecieron. Procedemos a resolver.

II

¿Actuó de forma arbitraria e irrazonable la Junta al cancelar permanentemente a la doctora Cabral Jiménez la licencia para ejercer la medicina en Puerto Rico? Erróneamente, el Tribunal de Apelaciones resolvió que sí.

Razonó que la Junta acordó otorgarle la licencia provisional a la doctora Cabral Jiménez, sujeta a unas condiciones que ella cumplió, y que no podía usar luego la información "nueva" que la fiscalía federal le entregó como excusa para incumplir el acuerdo. Planteó que la información contenida en esa nueva evidencia constaba en el expediente y fue evaluada y descartada por la propia Junta como insuficiente para mantener la suspensión.

Sin embargo, la Resolución 2014-376 no se basó realmente en la nueva evidencia. El Tribunal de Apelaciones pasó por alto que el factor determinante en la decisión de la Junta fue el hecho -probado- de que la doctora Cabral Jiménez no cumplió con los requisitos de ley para que se le confiriera la licencia y que resultaba imposible reinstalarle una licencia que carecía de los elementos para ser concedida. En la vista sobre la solicitud de reinstalación de licencia, los asesores legales de la Junta simplemente afirmaron que no contaban con evidencia suficiente para demostrar que la doctora Cabral Jiménez alteró el resultado de la reválida. No cuestionaron el hecho probado de que la doctora Cabral Jiménez no obtuvo la nota de pase en la reválida de ciencias clínicas. En ese hecho fue que el TEM basó la suspensión sumaria. La evidencia que fiscalía federal produjo solo ratificó ese hecho; confirmó a la Junta sus hallazgos anteriores. Ya en 2009, la Junta había determinado que, según su expediente, la doctora Cabral

Jiménez obtuvo una puntuación de 544, y no de 719. Esta información fue provista y corroborada por el doctor Vélez García, la oficial examinadora Mainardi Peralta le dio entera credibilidad y la Junta la ratificó por medio de una resolución, que fue confirmada por el Tribunal de Apelaciones y que nosotros nos negamos a revisar.

III

Hace muchos años, señalamos que "practicar la medicina y la cirugía no es un derecho natural al que tenga derecho cualquier persona […], dicha práctica está subordinada al ejercicio del poder público de preservar y proteger la salud pública". Alonso v. Tribl. Examinador de Médicos, 74 DPR 158, 164 (1952). El poder regulador del Estado sobre la práctica de las profesiones tiene como fin proteger la salud y bienestar públicos. Por eso, el Estado puede condicionar la práctica de ciertas profesiones a que primero se obtenga una licencia o permiso. Véase Román v. Trib. Exam. de Médicos, 116 DPR 71, 77-79 (1985). Ello ofrece la seguridad de que solo personas capacitadas realizarán ciertas actividades que requieren pericia.

Para cumplir con este propósito, el Estado delegó en las juntas examinadoras la tarea de corroborar que una persona se encuentra apta para ejercer determinada profesión, y les confirió extensa discreción para fijar las normas de admisión y certificación. Íd. Así pues, la Ley de la Junta de Licenciamiento y Disciplina Médica, Ley Núm. 139-2008 (20 LPRA secs. 131 et seq.), entró en vigor el 1 de enero de 2009 para establecer un nuevo organismo regulador de la práctica de la medicina, derogar la Ley Núm. 22 del 22 de abril de 1931 y disolver el TEM.

La Junta, en continuación de la gesta del TEM, tiene poder para "[s]eleccionar y/o administrar exámenes de licenciamiento" y para "[e]mitir o denegar licencias

iniciales o licencias aprobadas". Art. 8(c) y (g), Ley Núm. 139 (20 LPRA secs. 132e(c) y (g)). Es el organismo responsable de expedir las licencias, permanentes o provisionales, para ejercer la medicina en Puerto Rico. Para hacerlo, debe primero cerciorase de que la persona solicitante cumplió todos los requisitos y de que no existe razón que justifique denegar la licencia. Art. 2(f), Ley Núm. 139 (20 LPRA sec. 131(f)) y art. 4.7, Reglamento General de la Junta de Licenciamiento y Disciplina Médica de Puerto Rico, Reglamento Núm. 7811, de 10 de febrero de 2010.

Uno de los requisitos específicos para que se expida a un aspirante la licencia regular es "[h]aber aprobado las tres partes del examen de reválida […]". Art. 4.2(B)(1)(b), Reglamento Núm. 7811, supra. La licencia regular solo se expide a los aspirantes luego de "haber cumplido con todos los requisitos establecidos por esta Ley, luego de haber aprobado los exámenes correspondientes". Art. 22 (a), Ley Núm. 139 (20 LPRA sec. 133g (a)). Estos exámenes son: Ciencias Básicas, Ciencias Clínicas y el Examen Práctico. Art. 15, Ley Núm. 139 (20 LPRA sec. 133). Se trata de pruebas calificadoras que miden el nivel de conocimiento profesional, aptitud y destrezas mínimas para ejercer la profesión médica de forma adecuada. Art. 3.1, Reglamento Núm. 7811, supra. Indiscutiblemente, esto opera en beneficio de la comunidad

y va dirigido a cumplir con un interés primordial del Estado.

Naturalmente, la ley también confirió a la Junta el poder de "denegar una licencia para ejercer la profesión de médico u osteópata a toda persona que: (1) Trate de obtener la misma mediante fraude o engaño; (2) no reúna los requisitos establecidos en este capítulo; […]". Art. 26(b), Ley Núm. 139 (20 LPRA sec. 134(b)) y Capítulo XI, Reglamento Núm. 7811, supra. Igualmente, la Junta puede denegar cualquier "solicitud de licencia permanente o provisional" y cualquier "solicitud de renovación o recertificación" por las razones mencionadas. Art. 4.8 y 7.11, Reglamento Núm. 7811, supra.

La facultad del antiguo TEM bajo la ley de 1931 era igual en estos aspectos. El TEM tenía poder para denegar licencias a toda persona que, entre otras, "[t]rat[ara] de obtener la misma mediante fraude o engaño" o "[n]o re[uniera] los requisitos establecidos en la sec. 43 de este título" (20 LPRA sec. 52 (derog. 2008)), entre los que se encontraba "[h]aber aprobado los exámenes de reválida ofrecidos por el Tribunal Examinador". 20 LPRA sec. 43 (derog. 2008).

Ciertamente, una licencia, o solicitud de licencia, sea permanente o provisional, puede denegarse cuando se descubre que no reúne los requisitos que la ley estableció para ello. La no aprobación de la reválida da lugar a la revocación de la licencia. Si, en cambio, la Junta concede

una licencia sin observar la Ley y el Reglamento, realiza un acto nulo.

"Una actuación nula es inexistente, por lo que no genera consecuencias jurídicas. Dicho de otro modo, 'lo nulo nunca tuvo eficacia alguna, nunca nació en derecho, nunca existió'". Brown III v. J.D. Cond. Playa Grande, 154 DPR 225, 239 (2001) (citando a Montañez v. Policía de Puerto Rico, 150 DPR 917, 921 (2000)). Por eso, ninguna persona puede ampararse en una actuación administrativa incorrecta o ilegal. Santiago v. Depto. de la Familia, 153 DPR 208 (2001). "[L]os errores administrativos no son susceptibles de crear intereses libertarios que activen la protección del debido proceso de ley. A estos efectos, hemos expresado en varias ocasiones que 'un error administrativo no crea un estado de derecho que obligue [a una] agencia ni impida su corrección'". González v. ELA, 167 DPR 400, 413 (2006) (citando a Santiago, supra, pág. 218 y Magriz v. Empresas Nativas, 143 DPR 63, 71 (1997)).

Hace más de cien años, este Tribunal resolvió que no es posible, en casos "en que el interés público aparece seriamente afectado, aplicar el precepto legal de que nadie puede ir contra sus propios actos. Este principio de derecho puede aplicarse siempre en las relaciones civiles de unos ciudadanos para con otros; pero nunca en las relaciones del ciudadano para con el Estado". Vives v. La Junta de Farmacia, 24 DPR 669, 672 (1916).

En <u>Vives v. La Junta de Farmacia</u>, <u>íd.</u>, la Junta se negó a entregar una licencia a un solicitante, a pesar de haberle comunicado que podía recoger la licencia, pues descubrió que este no había pasado un examen de las materias científicas y literarias mientras estudiaba farmacia. A pesar de que el solicitante fue examinado y aprobado por la Junta, carecía de un requisito previo para obtener su licencia. "El [solicitante] no llegó a adquirir derecho de propiedad alguno a la licencia, porque jamás cumplió con todos los requisitos exigidos por la ley. Y la junta pudo en cualquier momento antes de expedir el certificado corregir sus propios yerros e inspirar su resolución última en el estricto cumplimiento de la ley". <u>Íd.</u>

Esta norma no ha cambiado. En 2006, validamos la actuación de la Administración de Corrección de reencarcelar a un grupo de convictos que fueron erróneamente dejados en libertad bajo supervisión electrónica por varios años. <u>González v. ELA</u>, <u>supra</u>. La concesión de la libertad a estos convictos constituía un error administrativo, susceptible de corregirse. "[N]o debemos confundir la equivocada concesión de libertad con la existencia de un interés libertario capaz de activar la protección del debido proceso de ley". <u>Íd.</u>, pág. 414. "[L]as consecuencias de aceptar que la concesión errónea de libertad a un convicto genera un interés libertario

protegido por el debido proceso de ley son claramente lesivas al interés público y a nuestra sociedad". Íd.

A la luz del derecho expuesto, es forzoso concluir que, ante apremiantes intereses públicos como la seguridad y la salud, no podemos "congelar en el tiempo las consecuencias nocivas de actuaciones estatales arbitrarias o erradas". Íd. El hecho de que la Junta haya dejado sin efecto la suspensión sumaria y haya concedido una licencia provisional a una persona a quien resultaba imposible reinstalarle una licencia, porque carecía de elementos para ser concedida, no es óbice para que el Estado corrija ese error. De lo contrario, se lesionarían apremiantes intereses públicos.

Bajo estas circunstancias, no es pertinente que la Junta le haya indicado a la doctora Cabral Jiménez que le otorgaría la licencia si esta cumplía ciertas condiciones. La Junta no está sujeta a actuar conforme a sus propios actos pasados realizados en contra de la ley. Su discreción existe solo dentro de los parámetros de la ley orgánica que la habilitó. Al negarse a validar un acto que fue realizado en contra de la ley, la Junta no abusó de su discreción. Al contrario, no tenía discreción para validarlo.

IV

En su oposición a la petición de *certiorari* y en su alegato, la doctora Cabral Jiménez reiteró varios argumentos presentados ante el Tribunal de Apelaciones que

merecen nuestra atención. Adujo que los casos federales en su contra se archivaron; que la evidencia producida por la fiscalía federal era inadmisible; que esa evidencia no era capaz de derrotar la presunción de corrección de los documentos que acreditaban que sí aprobó el examen, y que los asesores legales de la Junta afirmaron no contar con evidencia suficiente para demostrar que ella alteró el resultado de la reválida. Por estos fundamentos, entiende la doctora Cabral Jiménez que la Junta está obligada a reinstalarle su licencia. No tiene razón.

El testimonio del doctor Vélez García, y no las acusaciones federales, son la base para que la Junta mantuviera la suspensión y que el Tribunal de Apelaciones confirmara esa actuación. Por lo tanto, aunque las acusaciones fueron desestimadas, ello no debilita los fundamentos de la decisión de la Junta ni la obligaba a cambiar su postura. La facultad investigativa y adjudicativa de la Junta es independiente de aquella de la fiscalía federal. Además, el *quantum* de prueba requerido a ambas no es el mismo. La Junta necesita prueba clara, robusta y convincente para denegar una licencia (Artículo 10.14, Reglamento Núm. 7811, supra); la fiscalía federal necesita el estándar más alto de prueba más allá de duda razonable para lograr una convicción de delito. Véase In re Winship, 397 U.S. 358, 361 (1970).

La doctora Cabral Jiménez ha señalado varias veces que la nueva evidencia que la fiscalía federal produjo y

que la Junta consideró previo a realizar su determinación final es un documento mutilado y no admisible como evidencia. Ello es inconsecuente. Las Reglas de Evidencia no son aplicables a las vistas administrativas. Sec. 3.13, Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (LPAU), 3 LPRA sec. 2163(e). Además, la supuesta mutilación, consistente en la tachadura de nombres y números de seguro social, respondió al interés de no divulgar información de los demás aspirantes que tomaron la reválida en noviembre de 2003.

La presunción de corrección de los documentos que indicaban que la doctora Cabral Jiménez aprobó la reválida de ciencias clínicas quedó rebatida con el testimonio del doctor Vélez García, quien corroboró manualmente los resultados. Su testimonio mereció entera credibilidad por parte de la oficial examinadora Mainardi Peralta y sus conclusiones fueron ratificadas por la Junta. El Tribunal de Apelaciones confirmó y nosotros nos negamos a revisar. Al momento en que fiscalía federal produjo la nueva evidencia, los documentos que acreditaban que la doctora Cabral Jiménez aprobó la reválida de ciencias clínicas ya no gozaban de presunción de corrección. Por lo tanto, la evidencia que fiscalía federal produjo no hizo sino confirmar a la Junta sus hallazgos iniciales.

También es impertinente que los investigadores de la Junta hayan afirmado que no contaban con evidencia creíble ni suficiente para establecer que la doctora Cabral

Jiménez alteró el resultado de la reválida. Para retirarle la licencia, la Junta no tenía que probar que la doctora cometió fraude. Ciertamente, alterar los resultados de un examen da lugar al comienzo de una investigación y a la posible suspensión de la licencia. Sin embargo, el mero hecho de no haber obtenido la nota de pase requerida en una de las reválidas, es suficiente para denegar una licencia erróneamente otorgada.

Por último, ese proceso administrativo no es el adecuado para adjudicar planteamientos sobre responsabilidad civil de la agencia, si alguna. Las supuestas actuaciones negligentes de la Junta no se pueden subsanar otorgando una licencia a quien no cumple con los requisitos de ley. El interés público en garantizar la capacidad de los profesionales en quienes el pueblo confía su salud es primordial. Por lo tanto, sin importar cuán irregular la doctora argumente que el proceso fue, la Junta no puede reinstalarle la licencia. La ley establece requisitos sin los cuales no se pueden otorgar licencias, y ninguna junta examinadora tiene facultad para otorgar una licencia que no cumpla con esos requisitos. Lo contrario no sería aleccionar a la Junta por su supuesta negligencia, sino poner al Pueblo en peligro. En el balance de intereses entre lograr que los procesos administrativos sean bien conducidos y garantizar la capacidad profesional de quienes tienen la salud del

Pueblo en sus manos, la balanza se inclina a favor de la segunda.

V

La doctora Cabral Jiménez no puede pretender ganar una licencia médica por medio de un litigio basado en alegaciones procesales, cuando no cuenta con la base sustantiva (a saber, los requisitos de ley), para ser acreedora de esa licencia. El hecho de que la Junta haya dejado sin efecto una suspensión sumaria y concedido una licencia provisional para practicar la medicina a una persona a la que resultaba imposible reinstalarle una licencia médica, no impide que el Estado corrija el error administrativo cometido.

No se violenta el debido proceso de ley al privar a alguien del derecho a continuar ejerciendo una profesión cuando se descubre que su ejercicio no le está permitido por razón de incumplimiento con los requisitos impuestos por el Estado a los fines de proteger a la sociedad. Revocamos la sentencia del Tribunal de Apelaciones y devolvemos el caso a la Junta para que culmine los procesos de la suspensión sumaria.

Se dictará sentencia de conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Junta de Licenciamiento y Disciplina Médica

        Peticionaria

          v.

Denys Cabral Jiménez
Lic. #15,402

        Recurrida

CC-2016-0563

## SENTENCIA

En San Juan, Puerto Rico, a 2 de octubre de 2018.

Por los fundamentos antes expuestos, en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, Revocamos la sentencia del Tribunal de Apelaciones y devolvemos el caso a la Junta para que culmine los procesos de la suspensión sumaria.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez concurre con el resultado sin opinión escrita. La Juez Asociada señora Rodríguez Rodríguez no intervino. El Juez Asociado señor Feliberti Cintrón está inhibido.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo