Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| JOSÉ RAÚL LÓPEZ MORALES<br><br>Parte Peticionaria<br><br>v.<br><br>EX PARTE | TA2025CE00486 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm. SJ2025CV04095<br><br>Sobre: Petición de Orden – Eliminación de Antecedentes Penales y otros |

Panel integrado por su presidenta la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Rodríguez Flores, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 22 de octubre de 2025.

Comparece el Sr. José Raúl López Morales (señor López Morales o peticionario) mediante petición de *certiorari* instada el 22 de septiembre de 2025. Solicita que revoquemos la *Resolución* emitida el 31 de julio de 2025, y notificada el 5 de agosto de 2025, por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan. Mediante el referido dictamen, el TPI desestimó sin perjuicio la petición para que se eliminara el nombre del señor López Morales del Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores (Registro de Ofensores Sexuales) al concluir que este no cumplía con los requisitos de la Ley Núm. 243-2011 para ser eliminado.

Examinada la comparecencia del peticionario, así como el estado de derecho aplicable, prescindimos de la comparecencia del Pueblo de Puerto Rico y resolvemos denegar la expedición del auto de *certiorari* solicitado.

## I.

Surge del expediente ante nuestra consideración que, el señor López Morales fue sentenciado el 6 de octubre de 2003, a cuatro (4) años de reclusión bajo el régimen de sentencia suspendida y libertad a prueba, por haber cometido el delito de actos lascivos o impúdicos tipificado en el Art. 105 (b) del Código Penal de Puerto Rico de 1974. Posteriormente, le fue revocada la probatoria y fue ingresado a una institución penal. Así, el 18 de mayo de 2006, completó la totalidad de su sentencia y el 27 de junio de 2006 fue inscrito en el Registro de Ofensores Sexuales, conforme a las disposiciones de la Ley Núm. 266-2004.

Ahora bien, el 14 de mayo de 2025, el señor López Morales, por medio de su representación legal, incoó una *Petición de Eliminación del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores y Otros Remedios* ante el foro primario.[1] En esta, solicitó al foro de instancia que ordenara al Director del Sistema de Información de Justicia Criminal y a la Policía de Puerto Rico a eliminar su nombre y sus datos del Registro de Ofensores Sexuales de conformidad con las disposiciones de la Ley Núm. 28-1997, vigente a la fecha de emitida la sentencia, y de la Ley Núm. 266-2004, vigente a la fecha de extinguida su sentencia. Sostuvo que ya había cumplido el mínimo de diez (10) años de inscripción que requerían ambas leyes. Además, alegó que para el momento en que fue enmendada la Ley Núm. 266-2004 mediante la aprobación de la Ley Núm. 243-2011 ya había extinguido su sentencia e iniciado su inscripción en el Registro de Ofensores Sexuales. Por esta razón, arguyó que no venía obligado a registrarse más allá del término que le restaba cumplir según lo dispuesto en el Art. 5 de la Ley Núm. 28-1997 y la Ley Núm. 266-2004.

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC), expediente judicial del caso SJ2025CV04095, Entrada 1.

El 10 de junio de 2025 mediante *Moción en Oposición a Petición de Eliminación […]*, el Ministerio Público arguyó que, aun cuando el señor López Morales fue convicto por el Art. 105 (b) del Código Penal de Puerto Rico de 1974, este había sido acusado originalmente de una infracción al Art. 105 (a) por tratarse de una víctima menor de catorce (14) años.[2] A esos efectos, planteó que conforme a lo resuelto por el Tribunal Supremo de Puerto Rico en *Pueblo v. Ferrer Maldonado*, 201 DPR 974 (2019), el peticionario era un ofensor sexual Tipo III y debía permanecer inscrito en el Registro de Ofensores Sexuales de por vida. Razonó que, como en el momento en que se aprobó la referida ley el señor López Morales tenía la obligación de permanecer inscrito en el Registro de Ofensores Sexuales, le aplicaban las enmiendas de la Ley Núm. 243-2011.

En desacuerdo, el señor López Morales instó una *Réplica a Moción en Oposición del Ministerio Público a la Eliminación del Peticionario del Registro*.[3] En su escrito, aclaró que, luego de realizar un preacuerdo con el Ministerio Público, fue sentenciado y hallado culpable por el delito de actos lascivos sin minoridad. Aseveró además que extinguió su sentencia y comenzó su inscripción en el Registro de Ofensores Sexuales cinco años antes de que fuera aprobada la Ley Núm. 243-2011. En consonancia, manifestó que ha permanecido inscrito por un período mayor al término de diez (10) años contemplado en la Ley Núm. 28-1997 y la Ley Núm. 266-2004 para las personas convictas por el delito de actos lascivos, o en la alternativa, por un período mayor al término de quince (15) años contemplado para los ofensores sexuales Tipo I por la Ley Núm. 243-2011. Asimismo, puntualizó que permanecía inscrito a pesar de que la ley vigente no contemplaba la inscripción de personas convictas

---

[2] Sistema Unificado de Manejo y Administración de Casos (SUMAC), expediente judicial del caso SJ2025CV04095, Entrada Núm. 4.
[3] *Íd.*, Entrada Núm. 8.

por el delito de actos lascivos sin minoridad. Por ello, reiteró su petición de que se eliminaran su nombre y datos del Registro.

Por su parte, el 21 de julio de 2025, el Ministerio Público presentó una *Moción en Oposición a Réplica de la Defensa* mediante la cual reiteró su oposición a que se eliminara al señor López Morales del Registro de Ofensores Sexuales.[4] Enfatizó que al peticionario le aplicaban las enmiendas introducidas mediante la aprobación de la Ley Núm. 243-2011. Ante ello, puntualizó que este debía ser considerado un ofensor sexual Tipo III y permanecer inscrito de por vida en el Registro de Ofensores Sexuales.

Evaluados los escritos presentados por las partes, el 31 de julio de 2025, notificada el 5 de mayo de 2025, el TPI emitió una *Resolución* en la que desestimó sin perjuicio la petición del señor López Morales.[5] Razonó que, a tenor con lo resuelto por el Tribunal Supremo de Puerto Rico en *Pueblo v. Ferrer Maldonado*, 201 DPR 974 (2019), las enmiendas introducidas mediante la Ley Núm. 243-2011 no violaban la prohibición constitucional en contra de las leyes *ex post facto*. A su vez, dictaminó que las disposiciones de la referida ley eran de aplicación al peticionario y que este era un ofensor sexual Tipo III, por lo que debía permanecer inscrito de por vida en el Registro de Ofensores Sexuales.

En desacuerdo, el 20 de agosto de 2025, el señor López Morales presentó *Moción de Reconsideración de Resolución y de Enmienda Nunc Pro Tunc*.[6] No obstante, la misma fue denegada por el foro primario mediante *orden* notificada el 22 de agosto de 2025.[7]

Inconforme, el 4 de agosto de 2025, el señor López Morales acudió ante nos mediante el presente recurso y planteó los siguientes señalamientos de error:

---

[4] *Íd.*, Entrada Núm. 12.
[5] *Íd.*, Entrada Núm. 14.
[6] *Íd.*, Entrada Núm. 15.
[7] *Íd.*, Entrada Núm. 16.

Abusó de su discreción el Tribunal de Primera Instancia al desestimar la petición de eliminar el nombre del señor José Raúl López Morales del Registro de Personas Convictas por Delitos Sexuales y Abusos Contra Menores aun cuando la Ley 243-2011 eliminó el delito de actos lascivos (sin minoridad) de dicho requisito.

Abusó de su discreción el Tribunal de Primera Instancia al desestimar la petición de eliminar el nombre del señor López Morales del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores aun cuando este cumplió con el término de (10) años establecido en la Ley 28-1997, vigente a la fecha de la sentencia y de la Ley 266-2004, vigente a la fecha de extinguir la pena impuesta en la sentencia.

Erró el Tribunal de Primera Instancia al aplicar las disposiciones de la Ley número 243-2011 a este caso, en contravención a la prohibición constitucional a la aprobación de leyes ex post facto y al no aplicar el principio de favorabilidad del Art. 9 del Código Penal de Puerto Rico.

Erró el Tribunal de Primera Instancia al aplicar las disposiciones de la Ley número 243-2011 a este caso, en contravención de lo dispuesto en el Art. 9 del Código Civil de Puerto Rico y perjudicar derechos adquiridos por el peticionario bajo la Ley Núm. 28-1997.

Erró el Tribunal de Primera Instancia al no declarar la inconstitucionalidad de la Ley 243-2011, que crea el Registro de Personas Convictas por Delitos Sexuales ya que dicha legislación violenta los derechos constitucionales del peticionario reconocidos en la Carta de Derechos de nuestra constitución, específicamente la Sección 12 toda vez que continúa interfiriendo, limitando, estigmatizando y transgrediendo los derechos civiles que le asisten a todo ciudadano libre a pesar de este haber terminado de cumplir la pena que le fue impuesta.

Erró el Tribunal de Primera Instancia al no declarar inconstitucional la Ley 243-2011 porque viola el debido proceso de ley del peticionario al no disponer un procedimiento justo a toda persona que se le pretenda despojar de su derecho a la vida, libertad o propiedad cuando se trata de un interés protegido ya que estos constituyen derechos fundamentales del ser humano.

Conforme nos autoriza la Regla 7(B)(5) del Reglamento de este Tribunal de Apelaciones[8], prescindimos de la comparecencia del Pueblo de Puerto Rico, a través de la Oficina del Procurador General, y procedemos a resolver sin trámite ulterior.

---

[8] Regla 7 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 15, 215 DPR __ (2025).

**II.**

**A.**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior.[9]

Ante un recurso de *certiorari* civil, tenemos que evaluar nuestra autoridad para expedir el mismo al amparo de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V.[10] Ésta dispone que, el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente se expedirá por el Tribunal de Apelaciones cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.

No obstante, y por excepción a lo dispuesto anteriormente, el foro apelativo podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, al denegar la expedición de un recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[11]

Superado dicho análisis, y aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1 de Procedimiento Civil, *supra*, para poder ejercer debidamente nuestra facultad revisora es menester

---

[9] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).
[10] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.*, 202 DPR 478, 486 (2019).
[11] *Íd.*

evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento se justifica nuestra intervención. Estos criterios son:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[12]

En fin, la Regla 52.1 de Procedimiento Civil, *supra*, enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari*, mientras que la Regla 40 del Reglamento del Tribunal de Apelaciones guía la discreción de este foro en aquellos asuntos en los que sí se permite entender, pero en los que los jueces ejercerán su discreción.[13]

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[14] Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

---

[12] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62-63, 215 DPR __ (2025).
[13] *Torres González v. Zaragosa Meléndez*, 211 DPR 821, 849 (2023).
[14] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

**B.**

El Registro de Ofensores Sexuales se creó tras la aprobación de la Ley Núm. 28 de 1 de julio de 1997 (Ley Núm. 28-1997), también conocida como Ley del Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso contra Menores, según enmendada. Dicha ley establecía que las personas convictas por los delitos allí contenidos se mantendrían en el Registro de Ofensores Sexuales por un periodo de diez (10) años "desde que la persona cumplió la sentencia de reclusión, desde que comenzó a cumplir la sentencia bajo el beneficio de libertad a prueba o desde que es liberada bajo palabra."[15]  A su vez, disponía que, una vez transcurrido este término, el nombre y los datos del convicto serían eliminados del Registro de Ofensores Sexuales.[16]

Posteriormente, la Ley Núm. 28-1997 fue derogada por la Ley Núm. 266 de 9 de septiembre de 2004 (Ley Núm. 266-2004), también conocida como Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores.  En esta se estableció como política pública que el Registro no tenía un propósito punitivo, sino que pretendía garantizar la seguridad y el bienestar general de la población más vulnerable de la sociedad.[17] Además, la nueva ley mantuvo la obligación de permanecer inscrito en el Registro de Ofensores Sexuales, pero por un "periodo mínimo de diez (10) años desde que cumplió la sentencia impuesta".[18] A su vez, impuso el requisito de actualizar la información en el Registro anualmente.[19]

Posteriormente, la Ley Núm. 266-2004 fue sustancialmente enmendada por la Ley Núm. 243 de 14 de diciembre de 2011 (Ley Núm. 243-2011). El propósito de la referida ley fue atemperar el estatuto local a la ley federal "Adam Walsh Child Protection and

---

[15] Véase Art. 5 de la Ley Núm. 28-1997.
[16] *Íd.*
[17] Véase Art. 1 de la Ley Núm. 266-2004.
[18] Véase Art. 5 de la Ley Núm. 266-2004.
[19] *Íd.*

Safety Act of 2006" también conocida como el "Sex Offender Registration and Notification Act (SORNA)".[20]  En esta, se reiteró, una vez más, que el Registro de Ofensores Sexuales no tenía un propósito punitivo, sino que era un medio por el cual el Estado podía velar por la seguridad, protección y bienestar de la ciudadanía.[21]

La Ley Núm. 243-2011 clasificó los ofensores sexuales en tres categorías de acuerdo con el delito sexual cometido.[22] Bajo las mencionadas clasificaciones, la ley estableció que el ofensor sexual Tipo I debía permanecer inscrito y cumplir con los requisitos por un periodo de quince (15) años, mientras que el ofensor sexual Tipo II debía cumplir por un término de veinticinco (25) años y el Ofensor Sexual Tipo III de por vida.[23]  Por otro lado, la referida ley también dispuso que quedarían registradas "las personas que al momento de la aprobación de esta Ley, tenían la obligación de registrarse bajo la Ley 28-1997, según enmendada".[24]

## C.

Sabido es que la Sec. 12 del Art. II de nuestra Constitución prohíbe la aplicación de leyes *ex post facto*.[25] Según ha interpretado el Tribunal Supremo, existen cuatro tipos de estatutos que se han catalogado como *ex post facto*, en términos de la aplicación de esta norma. Éstas son:

> [L]as leyes que: (1) criminalizan y castigan un acto que al ser realizado no era delito; (2) agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; **(3) alteran el castigo imponiendo una pena mayor que la fijada para el delito al momento de ser cometido**, y (4) alteran las reglas de evidencia exigiendo menos prueba que la requerida por ley al momento de la comisión del delito para castigar al acusado o reduciendo el quantum de evidencia necesario para encontrarlo culpable.[26] (Énfasis suplido).

---

[20] Véase Exposición de Motivos de la Ley Núm. 243-2011.
[21] *Íd.*
[22] 4 LPRA sec. 536.
[23] 4 LPRA sec. 536c (8) (9) (10).
[24] 4 LPRA sec. 536a (e).
[25] Art. II, Sec. 12, Const. ELA, LPRA, Tomo 1; *González v. ELA*, 167 DPR 400, 408 (2006).
[26] *Íd.*

El propósito de la prohibición constitucional contra leyes *ex post facto* es garantizarles a los ciudadanos que los estatutos proveerán una advertencia adecuada de la conducta a prohibirse y sus consecuencias penales antes de que se incurra en dicha conducta.[27] Sin embargo, cabe aclarar que esta protección se activa únicamente si se pretende aplicar una ley penal de forma retroactiva cuando la ley vigente al momento de la comisión del acto resulte más favorable.[28] Así pues, para cuestionar la aplicabilidad de una ley al amparo de esta doctrina se requiere, no solo que se haya aplicado una ley retroactivamente, sino también que la ley aplicada resulte más onerosa que la vigente al momento de la comisión del acto.[29] Precisa señalar también que, la referida protección constitucional no alcanza actos judiciales, estatutos civiles, órdenes administrativas, reglas interpretativas o leyes de carácter procesal ni declaraciones de política pública.[30]

En materia de decisiones judiciales relacionadas al derecho penal sustantivo, el debido proceso de ley impide la aplicación retroactiva si tal determinación "(1) altera la definición de un delito; (2) brinda una nueva interpretación a un estatuto de manera que expone al acusado a una ofensa que era imprevista al momento de los hechos; (3) se aplica a eventos que ocurrieron antes de publicarse la opinión, o (4) coloca al ofensor en una posición de desventaja frente a la interpretación anterior".[31]

La prohibición de leyes *ex post facto* alcanza únicamente a aquellos estatutos que perjudican o desprotegen a una persona que enfrenta un procedimiento penal.[32] Es decir, debe tratarse de un

---

[27] *Íd.*

[28] *Íd.*; *Corretger v. Adm. Corrección,* 172 DPR 320, 324 (2007).

[29] *González v. ELA,* supra, págs. 408-409.

[30] *Íd.*, págs. 409-410; *Pueblo v. Thompson Faberllé,* 180 DPR 497, 504 (2010).

[31] *Pueblo v. Thompson Faberllé,* supra, pág. 505.

[32] *Collins v. Youngblood,* 497 US 37, 42 (1990).

estatuto que penaliza una conducta que antes no era penalizada o que hace una pena más gravosa para un convicto.[33]

Para determinar si ha habido una aplicación retroactiva de una ley penal, contraria a la protección de las leyes *ex post facto*, es preciso analizar si la ley aplicada es más onerosa que la vigente.[34] Para ello, precisa examinar si, "en comparación con el viejo estatuto, la nueva ley tiene el efecto de alargar el término de reclusión que habría de ser cumplido por el sujeto".[35] Por ejemplo, la aplicación retroactiva de una ley que elimina el beneficio de bonificaciones por buen comportamiento a un convicto, beneficio que estaba vigente al momento del acusado cometer el acto delictivo, es una aplicación contraria a la protección contra leyes *ex post facto*.[36]

Tampoco procede aplicar retroactivamente alguna ley que le impida a un convicto la posibilidad de ser elegible a la concesión de libertad bajo palabra o supervisión electrónica, pues ello tiene el efecto de alargar el término de reclusión que habrá de cumplir el convicto.[37] Desde esta perspectiva, resulta de particular importancia examinar si, en contraste con la ley anterior, la ley nueva alarga el término de reclusión que cumplirá el convicto.[38] Deben verse también otros criterios, como el que se agrave la pena o la medida de seguridad impuesta.

En *Smith v. Doe,* 538 US 84 (2002), el Tribunal Supremo de Estados Unidos tras analizar la constitucionalidad del *Alaska Sex Offender Registration Act* (ASORA) determinó que la ley no era punitiva, por lo que su aplicación retroactiva no violaba la protección constitucional federal contra leyes *ex post facto.* Primeramente, examinó la intención legislativa y luego, analizó la

---

[33] *Íd.*
[34] *González v. ELA,* supra, pág. 409.
[35] *Íd.*
[36] *Íd.*
[37] *Íd.*
[38] *Íd.,* pág. 415.

ley a la luz de siete factores esbozados en *Kennedy v. Mendoza-Martínez,* 372 US 144, 168-169 (1963). De esta forma, concluyó que ASORA perseguía un fin no punitivo, tal y como exponía su intención legislativa. Además, determinó que la publicación en internet del Registro no acarreaba un castigo; que la ley no imponía restricción a las actividades que los ofensores podían realizar, pues estos mantienen libertad de movimiento; y que el esquema regulador estaba relacionado razonablemente al peligro de la reincidencia, fin ulterior que el Estado pretendía prohibir.

Con respecto al propósito no punitivo de la Ley Núm. 266-2004, el Tribunal Supremo de Puerto Rico estableció que la inscripción de una persona en el Registro surge como consecuencia de una convicción previa por alguno de los delitos estatuidos en la ley.[39]

Sin embargo, la Exposición de Motivos de la Ley Núm. 266-2004, según enmendada, expresa claramente que el Registro no tiene un propósito punitivo.  Esto es, la intención del Estado al ordenar que como parte de su sentencia una persona convicta sea inscrita en el Registro, no constituye un castigo.

Así, el Tribunal Supremo de Puerto Rico determinó que la inscripción en el Registro constituye una medida de seguridad, que no surge de una ley penal, pero es impuesta como consecuencia del incumplimiento de una ley penal y recae como parte de una sentencia.[40]  Posteriormente, nuestro máximo foro judicial aclaró que las enmiendas introducidas por la Ley Núm. 243-2011 a la Ley Núm. 266-2004 aplicaban retroactivamente, ya que no violan la cláusula sobre leyes *ex post facto*.[41]

---

[39] *Pueblo v. Hernández García*, 186 DPR 656 (2002).
[40] *Íd.*, pág. 677.
[41] *Pueblo v. Efraín Ferrer Maldonado*, 201 DPR 974 (2019).

**III.**

En esencia, en el caso ante nos, el señor López Morales sostiene que el foro primario abusó de su discreción al desestimar la petición para eliminar su nombre del Registro de Ofensores Sexuales. Aduce que bajo la derogada Ley Núm. 28-1997 y Ley Núm. 266-2004 —vigentes a la fecha de la sentencia y de extinguir la pena impuesta— debía permanecer inscrito por el término de diez (10) años. Arguye también que la aplicación de la Ley Núm. 243-2011 contraviene la protección constitucional a la aprobación de leyes *ex post facto* y el principio de favorabilidad contenido en el Art. 9 del Código Penal de Puerto Rico. A su vez, plantea que fue declarado convicto por el delito de actos lascivos sin minoridad y añade que la Ley Núm. 243-2011 eliminó dicho delito del requisito de inscripción.

De entrada, resulta un hecho innegable que lo resuelto por el Tribunal Supremo de Puerto Rico en *Placer Román v. ELA,* 193 DPR 821 (2015) y *Pueblo v. Ferrer Maldonado,* supra, dispone de la controversia ante nuestra consideración.

En este caso, la obligación del señor López Morales de estar en el registro proviene del Art. 3(e) de la Ley Núm. 243-2011. Dicho articulado establece que: "quedarán registradas las personas que, al momento de la aprobación de esta Ley, tenían la obligación de registrarse bajo la Ley 28-1997, según enmendada".[42] A su vez, nuestro Más Alto Foro resolvió expresamente que, la aplicación retroactiva de la Ley Núm. 243-2011 a aquellas personas con la obligación de inscribirse en el Registro de Ofensores Sexuales bajo la Ley 28-1997, no contraviene la prohibición constitucional contra las leyes *ex post facto.* Ello pues, esta es una ley de carácter civil, no punitiva. De forma que, nos resulta forzoso concluir que las

---

[42] 4 LPRA sec. 536a.

disposiciones de la Ley 266-2004, según enmendada por la Ley Núm. 243-2011, eran aplicables al señor López Morales.

Ahora bien, el peticionario sostiene también que el TPI abusó de su discreción al desestimar su petición cuando la ley en cuestión no requiere su inscripción. *No le asiste razón.*

Del expediente se desprende que el señor López Morales fue acusado de cometer el delito de agresión sexual contra una menor de catorce (14) años. Sin embargo, no fue sino hasta luego de una negociación, previa a la celebración del juicio, que este suscribió una alegación preacordada con el Ministerio Público mediante la cual se declaró culpable de un delito menor. Bajo este acuerdo, se eliminó el hecho de la minoridad de la víctima y resultó convicto por el delito de actos lascivos, sin considerar las circunstancias de la víctima.

A la luz de las circunstancias del caso y tras un análisis desapasionado del expediente, colegimos que no intervendremos con la *Resolución* impugnada. Si bien el peticionario argumentó en reiteradas ocasiones que fue convicto por el delito de actos lascivos sin minoridad, lo cierto es que este fue acusado por dicho delito con el hecho de la minoridad. Ante dicho cuadro fáctico y cónsono con el esquema establecido en el referido estatuto, el peticionario es considerado un ofensor sexual tipo III y debe permanecer inscrito de por vida en el Registro de Ofensores Sexuales.

Por consiguiente, luego de analizar la totalidad de las circunstancias del caso, colegimos que no concurre ninguno de los criterios que mueva nuestra discreción para expedir el auto de *certiorari* solicitado y, en consecuencia, nos abstenemos de intervenir con la *Resolución* impugnada. Lo anterior, por no encontrar indicio alguno de que el foro primario actuó de forma arbitraria, caprichosa, en abuso de su discreción o que haya cometido algún error de derecho.

**IV.**

Conforme a lo anteriormente expuesto, se deniega la expedición del auto de *certiorari.*

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
